**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| Sandro Lomedico, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>MarineMax, Inc.,<br><br>    Defendant. | Case No. 8:24-cv-01784-MSS-AEP<br><br>Filed: July 29, 2024 |
| Kevin J. Niblock, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>MarineMax, Inc.,<br><br>    Defendant. | Case No. 8:24-cv-01955-WFJ-NHA<br><br>Filed: August 20, 2024 |

**PLAINTIFFS' JOINT MOTION TO CONSOLIDATE ACTIONS, APPOINT**
**INTERIM CLASS COUNSEL, AND**
**SET SCHEDULING DEADLINES UNDER F.R.C.P. 23(g)(3) & 42(a)**
**AND MEMORANDUM IN SUPPORT THEREOF**

Plaintiffs Sandro Lomedico and Kevin J. Niblock (collectively "Plaintiffs"),

individually, and on behalf of all others similarly situated, respectfully request the

Court: (1) pursuant to Fed. R. Civ. P. 23(g)(3) and 42(a), and Local Rule 1.07(b),

consolidate the above-captioned cases, as well as any other future actions filed or

transferred related actions against Defendant MarineMax, Inc. ("Defendant" or "MarineMax") in connection with MarineMax data breach that occurred in March 2024; (2) appoint Mariya Weekes of Milberg Coleman Bryson Phillips Grossman PLLC and Brittany Resch of Strauss Borrelli PLLC as Co-Lead Counsel (collectively "Proposed Interim Class Counsel); (3) stay the Related Actions (defined below) pleading and other deadlines: (4) require the filing of a consolidated class action complaint ("CC") within 45 days of entry of an order consolidating the cases and appointing leadership; and (5) set the deadline for Defendant's response(s) to the CC as 45 days after the CC is filed, and in the event the Defendant's response(s) is a motion to dismiss, set the deadline for 30 days thereafter for Plaintiffs' response(s) thereto, followed by 30 days thereafter for the Defendant's reply.

## I.    INTRODUCTION

Plaintiffs seek various claims against MarineMax related to notifications sent to current and former employees and customers concerning the unauthorized access or acquisition of personal identifiable information ("PII") stemming from a data breach ("Data Breach"). As a result, two class action lawsuits were filed in the United States District Court for the Middle District of Florida: Case No. 08:24-cv-01784 and Case No. 8:24-cv-01955 (the "Related Actions"). The Related Actions concern common issues of law and fact and seek relief on behalf of overlapping

classes. Accordingly, to preserve party and judicial resources and prevent duplication of effort and the risk of inconsistent rulings, these actions are appropriate for consolidation.

Prior to the filing of this Motion, counsel for Plaintiffs conferred with counsel for MarineMax who indicated MarineMax does not oppose consolidation.[1] Should the Court Order the cases be consolidated, Plaintiffs will file a CC.

## II.    FACTUAL AND PROCEDURAL BACKGROUND.

### A.    The Parties

MarineMax is a Florida-based company that sells boats and also offers financing, insurance, and educational programs.[2]

MarineMax collected and continues to collect the PII of its employees and customers throughout its usual course of business operations. MarineMax acquired, collected, and stored Plaintiffs' and Class Member's PII. Plaintiffs are a former employee and a former customer of MarineMax.

---

[1] MarineMax's non-opposition to consolidation is without waiver of any and all defenses, including the right to raise jurisdictional challenges, compel arbitration, or oppose class treatment. MarineMax also does not agree with the characterization of facts in this Motion or the need for class treatment.

[2] https://www.marinemax.com/marinemax-experience (last visited August 16, 2024).

**B.    The Data Breach**

At some point before March 10, 2024, an unauthorized actor gained access to the MarineMax's network and computer systems and obtained unauthorized access to MarineMax's files.[3] The information accessed by an unauthorized third-party in the Data Breach included Plaintiffs' and Class Members' names, Social Security numbers, and driver's license numbers.

**C.    Procedural History**

MarineMax began notifying affected individuals of the Data Breach on or about July 16, 2024. In the weeks following, two class action lawsuits were filed in the United States District Court for the Middle District of Florida against MarineMax, each seeking to redress the harm caused by the Data Breach: (1) *Lomedico v. MarineMax, Inc.*, Case No. 8:24-cv-01784; and (2) *Niblock v. MarineMax, Inc.*, Case No. 8:24-cv-01955 (hereinafter collectively "Related Actions"). The Related Actions focus on the same factual predicate—the Data Breach—and assert nearly identical claims for relief.

## III.    THE ACTIONS SHOULD BE CONSOLIDATED BEFORE THIS COURT.

The Related Actions before this Court are nearly identical and consolidation

---

[3]    *See* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/07822acb-6bb3-4bf8-8ea6-9a7b98f106c0.html (last visited August 16, 2024).

is appropriate.[4] Each lawsuit arises from the same common set of operative facts—the Data Breach. Due to each Plaintiffs' reliance on the same set of operative facts, Plaintiffs assert overlapping claims, on behalf of similarly defined classes, seeking similar relief. The above-captioned cases, the parties thereto, and the Court will be best served in a consolidated proceeding.

### A.    Legal Standard

Federal Rule of Civil Procedure 42(a) reads:

> If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

*Kavra v. Health Ins. Innovations, Inc.*, No. 17-cv-2186, 2017 WL 10295953, at *1 (M.D. Fla. Dec. 28, 2017). "The district court's decision under Rule 42(a) is purely discretionary." *Kaplan v. 21st Century Oncology Holdings, Inc.*, No. 16-cv-210, 2016 WL 9383330, at *2 (M.D. Fla. July 21, 2016) (citing *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)). However, before making a decision, the district court "must take into account the following factors: (1) whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues; (2) the burden on parties,

---

[4] Pursuant to Local Rule 1.07(a)(2)(B), Plaintiffs in the Related Actions have filed Motions to Transfer the Niblock Action to the Honorable Judge Mary S. Scriven before whom the Lomedico Action is currently pending.

witnesses and available judicial resources posed by multiple lawsuits; (3) the length of time required to conclude multiple suits as against a single one; and (4) the relative expense to all concerned of the single-trial, multiple-trial alternatives" (the "*Hendrix* Factors"). *Id.*; *see also Burrow v. Forjas Taurus S.A.*, No. 16-cv-21606, 2018 WL 809439, at *2 (S.D. Fla. Feb. 9, 2018) (citing *Hendrix*, 776 F.2d at 1495).

### B.    Argument and Authorities

#### 1.    *Common Questions of Law and Fact Predominate*

Even from a cursory review of the complaints filed in each action, it is clear that common questions of law and fact permeate these cases.[5]

The Related Actions focus on one factual event – MarineMax's Data Breach – which resulted in the unauthorized access or acquisition of Plaintiffs' and class members' PII. Each action alleges the same factual contentions, *i.e.*, (i) MarineMax knowingly violated its obligations to abide by best practices and industry standards in protecting its former and current employees' and customers' PII; (ii) these failures enabled an unauthorized third party to intercept, access, and acquire the PII MarineMax collected and maintained, putting Class members' PII at a serious and ongoing risk; and (iii) MarineMax failed to disclose the full extent of the Data Breach and notify the affected employees and customers in a timely

---

[5] MarineMax's non-opposition to consolidation is without waiver of any and all argument that common questions of law and fact do not predominate or will otherwise justify class treatment.

manner. These factual allegations are the gravamen of each of the filed actions, thus numerous common questions of fact exist.

Additionally, the legal claims asserted by each Plaintiff are substantially similar, both including negligence, breach of implied contract, and unjust enrichment. These claims are asserted on a classwide basis, on behalf of similarly defined classes, against the same Defendant. Plaintiffs' claims will rise or fall together. As such, common questions of law pervade these cases. *See Kaplan*, 2016 WL 9383330, at *2 (court consolidated data breach cases where: (i) "common questions of law and fact permeate[d] the[] cases"; (ii) all of the cases arose from the same alleged data breach; (iii) all of the cases were class actions with class allegations; (iv) all of the cases shared at least one similar substantive claim – negligence; and (v) the cases were filed against a common defendant); *see also McDonald v. PaperlessPay Corp.*, No. 20-1005, 2021 WL 931599, at *3 (M.D. Fla. Mar. 11, 2021); *Bedont v. Horizon Actuarial Servs., LLC*, No. 22-cv-1565, 2022 WL 3702117, at *2 (N.D. Ga. May 12, 2022); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 502 (S.D. Fla. 2002).

### 2. *The Hendrix Factors Support Consolidation*

Applying the relevant factors from *Hendrix* further supports consolidation.

a. *Factor 1: The Cases Face the Risk of Inconsistent Adjudications*

"[T]here is a substantial threat of inconsistent adjudications of common factual and legal issues if the cases are allowed to proceed separately." *Kaplan*, 2016 WL 9383330, at *2. All of the actions are plead as class actions, and all allege claims for negligence, breach of implied contract, and unjust enrichment. *Id.* Additionally, each action seeks certification of similar classes. Absent consolidation, it is possible multiple overlapping classes could be certified which may lead to MarineMax being responsible for more than one judgment for the same class. The potential risk of prejudice and possible confusion is far outweighed by the risk of inconsistent adjudications. *Id.*

Moreover, the Related Actions were filed within the last month and have the same procedural posture. "Thus, this is not a case where consolidation will result in the delay of an otherwise trial-ready action." *McDonald*, 2021 WL 931599, at *4. Plaintiffs and MarineMax will experience very little prejudice, if any, by consolidating these cases.

Therefore, this factor militates in favor of consolidation. *See id.* at *3; *Newman*, 209 F.R.D. at 502.

       b.     *Factor 2: The Burden Posed by Multiple Lawsuits is Substantial*

Next, the burden on the parties, the witnesses, and judicial resources will be substantially lessened by consolidation. Here, MarineMax does not oppose consolidation, and absent consolidation of the Related Actions, will likely be subject to duplicative discovery requests, depositions, drafting, trial preparation, and hearings.

Likewise, Plaintiffs do not oppose consolidation, which augurs in favor of consolidation. *See Kavra*, 2017 WL 10295953, at *1; *Bedont*, 2022 WL 3702117, at *2. Consolidation will allow Plaintiffs to jointly prosecute the case, share discovery documents, and avoid the possibility of the Court certifying overlapping classes. The burden of maintaining both actions separately will be lessened by consolidation.

Lastly, judicial resources will be conserved by presiding over one consolidated case rather than multiple separate cases. This will reduce the number of motions, briefings, hearings, and trials before the Court.

Accordingly, the second *Hendrix* factor also weighs in favor of consolidation. *See Kaplan*, 2016 WL 9383330, at *2; *see also Fifth Third Bank v. MHA 8680 LLC*, No. 14-cv-139, 2014 WL 12697205, at *1 (M.D. Fla. July 28, 2014); *Gabbard v. Elec. Ins. Co.*, No. 22-cv-384, 2022 WL 2111503, at *1 (M.D. Fla. May 4, 2022); *Burrow*, 2018 WL 809439, at *7.

c.    *Factor 3: Litigating Separate Actions Would Require More Time than Litigating a Consolidated Action*

It is undeniable that litigating multiple separate causes of action versus one consolidated action would take substantially more time for the Court and the parties. Thus, "the length of time required to conclude a consolidated lawsuit instead of multiple suits is likely to be significantly lessened and, therefore, weighs in favor of consolidation." *Kaplan*, 2016 WL 9383330, at *2.

d.    *Factor 4: The Expense of Multiple Trials Supports Consolidation*

"Finally, the relative expense to all parties concerned—particularly with regard to discovery—is highly likely to be lessened by litigating in one consolidated case rather than litigating in [two] separate cases." *Id.* Thus, this factor also supports consolidation. Therefore, the Court should consolidate these (and all future) related cases.

## IV.    PROPOSED INTERIM CLASS COUNSEL MEET THE REQUIREMENTS OF RULE 23(G)

Rule 23(g)(3) explicitly permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary

discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation ("MCL") § 21.11 (4th ed. 2004).

When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Fed. R. Civ. P. 23(g)(1)(A). *See Kjessler v. Zaappaaz, Inc.*, No. 4:17-CV-3064, 2018 WL 8755737, at *3 (S.D. Tex. Aug. 31, 2018) (citing *Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008). Under the rule, a court appointing class counsel must evaluate whether the proposed counsel will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(2), (4). In doing so, a court must consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A), (2). A court, in its discretion, also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

## V.   APPOINTMENT OF PROPOSED INTERIM CLASS COUNSEL IS APPROPRIATE

Proposed Interim Class Counsel satisfy all the requirements for appointment by the Court under Rule 23(g). The attorneys and their firms have

successfully litigated numerous class actions involving privacy claims on behalf of tens of millions of consumers. Proposed Interim Class Counsel possess the necessary resources to prosecute this litigation, have the support of the Plaintiffs from each of the cases on file, are working together collectively already, and will continue to work in this fashion to manage this litigation effectively and efficiently. Because Proposed Interim Class Counsel have the case management and complex litigation skills, experience, knowledge of the relevant facts and legal issues, support of all Plaintiffs and their counsel, and the extensive resources needed to efficiently prosecute this action on behalf of putative class members, the Court should grant Plaintiffs' motion.

Proposed Interim Class Counsels' experience, knowledge, resources, and successful track record litigating consumer data breach cases demonstrates they are qualified to represent the Proposed Class's interests under the factors enumerated in Fed. R. Civ. P. 23.

A.    **Proposed Interim Class Counsel Have Performed Substantial Work Investigating and Litigating the Claims to Date.**

One factor courts consider is the work and resources counsel expend investigating the claims being asserted when appointing lead counsel. *See, e.g., Adedipe v. U.S. Bank, Nat. Ass'n*, No. CIV. 13-2687 JNE/JJK, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing interim class counsel because they "devoted the more substantial effort towards pre-suit investigation and identification of

claims"); *In re IndyMac ERISA Litig.*, No. CV0804579DDPVBKX, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) (same).

Here, immediately after the public announcement of the Data Breach, Proposed Interim Class Counsel began investigating potential legal claims and remedies for the victims of the breach. Those investigations included, among other things: (1) investigating the facts surrounding the Data Breach; (2) interviewing numerous consumers injured by the Data Breach; (3) researching legal claims; (4) drafting initial pleadings; (5) investigating and consulting experts in the area of data security and damages; and (6) organizing Plaintiffs and counsel and discussing the consolidation of the Related Actions for unified proceedings and preparing the consolidation and proposed leadership papers.

The Plaintiffs allege that the facts in the Related Actions are egregious in terms of the impact to individual consumers and the consumer marketplace as a whole. Given the scope of the Data Breach and the number of victims potentially affected, Proposed Interim Class Counsel worked to quickly organize and avoid any delay that could result from a leadership dispute to address the merits of the case as expeditiously as possible. Moreover, in the spirit of their prior and positive working relationships, assignments have been, and will continue to be, allocated

fairly and in a manner that takes advantage of the strengths of each firm while eliminating any duplicity.

Proposed Interim Class Counsel will continue to operate as a cohesive, well-organized group. Going forward, and if appointed, Proposed Interim Class Counsel will establish a standardized protocol for managing and reporting time and expenses incurred to prosecute the case as efficiently as possible. *See e.g.*, *In re Lenovo Adware Litig.*, No. 15-MD-02624, 2015 WL 10890657, at *1 (N.D. Cal. July 27, 2015).

Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Class Counsel under FRCP 23(g)(3), as Proposed Interim Class Counsel are organized, unified, and committed to working together for the best interests of the class. *Dependable Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-cv-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 218) (selecting interim counsel based on the effort expended to investigate the claims and the resources available to prosecute the litigation).

### B.  Proposed Interim Class Counsel Possess the Necessary Experience, Skill, and Knowledge of the Law to Prosecute this Litigation.

A primary factor in selecting interim counsel is their experience, skill, knowledge, and familiarity with the relevant law. *See, e.g., In re Meta Pixel Healthcare Litig.*, No. 22-CV-03580-WHO, 2022 WL 18399978, at *2 (N.D. Cal. Dec. 21, 2022). Proposed Interim Class Counsel possess the experience and skill to

prosecute this action efficiently and effectively. As set forth below, their résumés include extensive experience leading complex class actions, including data breach cases on behalf of millions of consumers. They will formulate and present positions on substantive and procedural issues during the litigation. *See* MCL § 10.221 ("Typically [lead counsel] act for the group—either personally or by coordinating the efforts of others—in presenting…arguments…to the court, working with opposing counsel…, initiating and organizing discovery…"). Courts have found that proposed leadership's experience and service as lead counsel in prior cases is particularly persuasive. *See, e.g., In re Lenovo Adware Litig.*, 2015 WL 10890657, at *2 (finding class-action and complex litigation leadership experience relevant for appointment).

As demonstrated below, Proposed Interim Class Counsel each has substantial experience, resources, and knowledge that will benefit the putative class as this litigation proceeds.

### 1. *Mariya Weekes of Milberg, Coleman, Bryson, Phillips, Grossman, PLLC*

Mariya Weekes is Senior Counsel at the international plaintiffs' class action firm Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"). Since Milberg's founding in 1965, it has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate

governance, and recovered over $50 billion in verdicts and settlements.[6] Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court.[7] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing.  Milberg has more than 100 attorneys on staff and has offices across the United States and the European Union.

Ms. Weekes is a former Florida State Circuit Court Judge who sat on the bench from 2018 – 2023. As a Florida Circuit Court Judge, she presided over thousands of complex cases, hundreds of trials, and motions. In her capacity as a Circuit Court Judge, she served on the Circuit's appellate panels reviewing appeals from the lower trial Courts and administrative agencies. Before ascending to the bench, she practiced as a trial lawyer representing individuals and corporations in complex cases throughout the State of Florida. As a practicing attorney, she has personally tried dozens of jury trials to verdict and has participated in many significant cases. Both as a civil trial lawyer and former prosecutor, she has handled complex cases from their inception through appeal.

---

[6] *See, e.g., In re Tyco International Ltd., Securities Litigation*, MDL 1335 (D.N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.

[7] *See* https://milberg.com/precedent-setting-decisions/page/3/.

Since leaving the bench, she now represents individuals and other entities in class action litigation in both state and federal courts.

Ms. Weekes is a member of Milberg's Cybersecurity and Data Privacy Group, which has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country including some currently pending in the United States District Court for the Middle District of Florida. *See, e.g., In re: LoanCare Data Security Breach Litigation,* 3:24-cv-1508 (M.D. Fl.) (Ms. Weekes is Co-lead in a Data Breach involving more than 1.5 Million individuals); *In Re: Berry, Dunn, McNeil & Parker Data Security Incident Litigation*., No. 2:24-cv-00146 (D. Maine) (Ms. Weekes was appointed to the executive committee in a consolidated action involving 1.1 million consumers); *Reichbart v. Financial Business and Consumer Solutions, Inc*., No. 24-cv-1876 (E.D. Penn.) (Ms. Weekes was appointed chair of the Plaintiffs' Executive Committee in a consolidated action involving more than 1.9 million consumers); *In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Milberg was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers).[8] Milberg's Cybersecurity and Data Privacy Group is largely

---

[8] *See, also Morrill v. Lakeview Loan Servicing, LLC*, Case No. 1:22-cv-20955-DPG (S.D. Fla.) (where Milberg is appointed to the leadership committee in a data breach class action involving 6 million consumers); *Sherwood v. Horizon Actuarial Services, LLC*, Case No. 1:22-cv-01495-ELR

responsible for developing the favorable case law that many plaintiffs rely on in the data breach space. *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

### 2. *Brittany Resch of Strauss Borrelli PLLC*

Brittany Resch is a partner in Strauss Borrelli's nationwide class action practice. She focuses on litigating complex class actions in state and federal courts—including disputes involving data breaches, false advertising, and consumer protection and privacy issues. Since 2022, Ms. Resch has served as an adjunct professor at the University of Minnesota Law School teaching a seminar on e-Discovery. Ms. Resch has substantial experience managing all aspects of discovery in the firm's complex class action matters. Ms. Resch received her J.D.

---

(N.D. Ga.) (where Milberg is court-appointed co-lead counsel in a data breach class action involving 4 million consumers).

from the University of Minnesota Law School in 2015, after which she clerked for the Honorable Richard H. Kyle, Senior United States District Judge for the District of Minnesota. Ms. Resch was named one of the Attorneys of the Year in 2019 by Minnesota Lawyer for her work representing a *pro se* litigant in federal court through the District of Minnesota Federal Bar Association's Pro Se Project.

Ms. Resch most recently has significant experience in data privacy litigation and is currently litigating more than fifty data breach cases in courts around the country as counsel on behalf of millions of data breach victims, including *Pull, et al. v. Baer's Furniture Co., Inc.*, Case No. 2024-CA-003418-O (Orange County, Florida) (appointed Settlement Class Counsel); *McKittrick v. Allwell Behavioral Health Services*, Case No. CH-2022-0174 (Muskingum County, Ohio) (appointed class counsel for settlement purposes); *Rosario, et al. v. Baldor Specialty Foods, Inc.*, Case No. 23-cv-03580 (S.D.N.Y.) (appointed class counsel for settlement purposes); *Stern v. Academy Mortgage Corp.*, Case No. 2:24-cv-15-DBB (D. Utah); *Hall v. Centerspace, LP*, Case No. 22-cv-2028 (D. Minn.) (appointed Settlement Class Counsel); *Morrison v. Entrust Corp., et al.*, Case No. 23-cv- 415 (D. Minn.) (appointed Settlement Class Counsel); *Batchelor v. MacMillan, et al.*, Case No. 157072/2023 (New York County, NY) (appointed Settlement Class Counsel); *Tribbia, et al., v. Hanchett Paper Company*, Case No. 2022 CH 3677 (Cook County, IL); *Benedetto v. Southeastern Pennsylvania Transportation Authority*, No. 210201425 (C.C.P. Phila.);

*Corra, et al. v. ACTS Retirement Services, Inc.*, No. 2:22-cv-02917 (E.D. Pa.); *Lamie, et al. v. LendingTree, LLC*, No. 3:22-cv- 00307 (W.D.N.C); and *In re Lincare Holdings Inc. Data Breach Litigation*, No. 8:22- cv-01472 (M.D. Fl.).

**C.    Proposed Interim Class Counsel have and will continue to devote sufficient resources to this case.**

The resources Proposed Interim Class Counsel have already and will continue to commit to the case also strongly supports the appointment of Proposed Interim Class Counsel. As demonstrated above, Proposed Interim Class Counsel and their firms' resources are not merely financial, but also include substantial expertise and work-product developed in other similar cases, which will benefit Plaintiffs and the putative class. Proposed Interim Class Counsel's ability to draw from this well-developed repository of information will also allow them to streamline the litigation.

Each attorney understands the time, energy, and skill necessary to lead this litigation, and each has committed the resources required to ensure the effective and efficient representation of the putative class. Proposed Interim Class Counsel can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the country. In fact, Proposed Interim Class Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to it and coordinating among themselves to file this leadership proposal

and to consolidate the Related Actions. And, as counsels' experience indicate, Proposed Interim Class Counsel have the resources and capacity to see this litigation through to its conclusion, including trial.

If appointed as interim counsel, Proposed Interim Class Counsel will continue to commit the same resources and effort to this case as they have committed to other successful class action litigations and are equally committed to working cooperatively and efficiently for the benefit of the class.

### D.    Additional Factors Supporting Formal Designation of Proposed Interim Class Counsel

Plaintiffs' and their respective counsels' support for the proposed leadership structure also weighs in favor of appointing the Proposed Interim Class Counsel. Notably, the proposed leadership structure has the support of both Plaintiffs and the law firms involved in the litigation. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel."); *MCL* §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach). Indeed, after their cases were filed, Proposed Interim Class Counsel moved quickly to coordinate the cases and the proposed leadership structure to avoid any delay attendant with potential multi-district litigation proceedings due to the egregious

nature of MarineMax's unlawful conduct. Proposed Interim Class Counsel seek this leadership structure to best serve the interests of the classes in the most efficient manner possible.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the Court, all of which are critical to the successful management of the litigation. *See MCL* § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id*. Unlike defense counsel, the plaintiffs' side of consolidated litigation must quickly and effectively merge to form an alliance against often well-financed opponents, as is the case here. This process has the potential for disorganization, in-fighting, and inefficiencies. It is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." Duke Guidelines, *supra*, at 43. Selecting lawyers who have previously worked together has many benefits. They have developed working relationships, know of complementary talents, and have "developed certain systems for handling workflow and comparative advantages

that will help expedite the case relative to a leadership committee working together for the first time." *Id*. Nowhere could these sentiments be more accurate than among the counsel proposed for Proposed Interim Class Counsel. In other words, Proposed Interim Class Counsel are well suited to jointly prosecute this action because they are able to work cooperatively and inclusively with themselves and other counsel.

Importantly, Proposed Interim Class Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. They each understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party litigation funding to do so.

While Proposed Interim Class Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation the case is prosecuted efficiently and without duplication. Accordingly, they have already discussed how best to organize to effectively use their members' diverse skills and unique experiences for the efficient prosecution and management of this litigation while avoiding unnecessary and duplicative billing.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully asks the Court to grant this motion and enter an order:

(1)    consolidating the Related Actions;

(2)    designating the *Lomedico* case as the lead case;

(3)    directing that all papers in the Consolidated Action be filed under Case 08:24-cv-01784 with the following caption:

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| IN RE MARINEMAX, INC. DATA SECURITY LITIGATION<br><br>This Document Relates to: | Lead Case No. 08:24-cv-01784<br><br>Consolidated Action |
| --- | --- |

(4)    appointing Mariya Weekes of Milberg Coleman Bryson Phillips, Grossman PLLC and Brittany Resch of Strauss Borrelli PLLC as Interim Co-Lead Counsel;

(5)    staying the Related Actions pleading and other deadlines, and setting a deadline for the filing of a single CC for 45 days after the court's order consolidating the cases and appointing leadership; and

(6)    setting the deadline for MarineMax's response to the CC 45 days thereafter, and if the response is a motion to dismiss, setting a deadline of 30 days thereafter for Plaintiffs' response, followed by 30 days thereafter for MarineMax's reply.

In addition, Plaintiffs request leave, pursuant to Local Rule 3.01(f) and the Court's preferences, to submit their proposed order granting this Motion.

Dated: August 27, 2024        Respectfully Submitted,

By: */s/ Mariya Weekes*

MARIYA WEEKES
Florida Bar No. 56299
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL 33134
Tel: (786) 879-8200
Fax: (786) 879-7520
Email: mweekes@milberg.com

Brittany Resch
bresch@straussborrelli.com
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

*Attorneys for Plaintiff and the Proposed Class*

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Pursuant to Local Rule 3.01(g), the undersigned has conferred with all Plaintiffs' counsel in the related actions and counsel for Defendant and is authorized to state that all consent to the relief requested in this Motion.

Dated: August 27, 2024            Respectfully Submitted,

By: <u>*/s/ Mariya Weekes*</u>
            MARIYA WEEKES
            Florida Bar No. 56299
            **MILBERG COLEMAN BRYSON
            PHILLIPS GROSSMAN, PLLC**
            201 Sevilla Avenue, 2nd Floor
            Coral Gables, FL 33134
            Tel: (786) 879-8200
            Fax: (786) 879-7520
            Email: mweekes@milberg.com

1

## <u>CERTIFICATE OF SERVICE</u>

I, Mariya Weekes, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 27th day of August, 2024.

By:  <u>*/s/ Mariya Weekes*</u>
MARIYA WEEKES
Florida Bar No. 56299
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL 33134
Tel: (786) 879-8200
Fax: (786) 879-7520
Email: mweekes@milberg.com