## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |
|---|---|
| SANDRO LOMEDICO and KEVIN J. NIBLOCK, on behalf of themselves and all others similarly situated, | Case No.: 8:24-cv-1784-MSS-AEP |
| Plaintiffs, | |
| v. | |
| MARINEMAX, INC., | |
| Defendant. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Sandro Lomedico and Kevin J. Niblock, individually, and on behalf of the Settlement Class,[1] respectfully submit this Unopposed Motion for Preliminary Approval of the Class Action Settlement.[2]

---

[1] All capitalized terms used herein shall have the same meanings as those defined in the Settlement Agreement, attached as ***Exhibit A***.

[2] Defendant's non-opposition to this Motion for Preliminary Approval is not to be construed as an admission of any wrongdoing or agreement as to the ultimate viability of Plaintiffs' legal theories and shall not be construed as consenting to class certification for any purpose other than to resolve this matter consistent with the terms of the settlement agreement. Accordingly, Defendant reserves all rights to defend itself if this settlement is not approved and litigation proceeds accordingly.

I.   **INTRODUCTION**

This Action concerns a Data Incident experienced by Defendant MarineMax, Inc. At some point before March 10, 2024, an unauthorized actor gained access to MarineMax's network and computer systems and obtained unauthorized access to MarineMax's files. The information accessed by an authorized third-party in the Data Incident included names, Social Security numbers, and driver's license numbers of certain customers and employees, including Plaintiffs' and Class Members. As a result of the Data Incident, Plaintiffs and Class Members alleged they will face a heightened and imminent risk of fraud and identity theft for the rest of their lives.

The Parties have entered into a Settlement Agreement to resolve Plaintiffs' claims on a class-wide basis and dismiss all claims against Defendant with prejudice ("S.A.," attached hereto as Exhibit A). As demonstrated below, the Settlement provides significant monetary relief for the Settlement Class, including a non-reversionary, all cash $1,018,825.50 Gross Settlement Amount. The Court should find the Settlement is within the range of reasonableness necessary for this Court to grant Preliminary Approval under Rule 23(e) and enter an order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel for the Settlement Class; (iv)

approving the form of the Notices and the Notice Program; (v) approving the Claim Form and the Claim process; (vi) appointing Kroll Settlement Administration as the Claims Administrator; (vii) establishing procedures and deadlines for Settlement Class members to request exclusion from the Settlement and for Settlement Class Members to object to the Settlement; and (viii) scheduling a Final Approval Hearing at which time the Court will consider whether to grant Final Approval of the Settlement and Class Counsels' Application for Attorneys' Fees and Costs.

## II.    BACKGROUND

MarineMax is a Florida-based company that sells boats and also offers financing, insurance, and educational programs. ECF No. 19, Consolidated Complaint, ¶ 2.

MarineMax collected, and continues to collect, the PII of its employees and customers throughout its usual course of business operations. *Id* ¶ 4. MarineMax acquired, collected, and stored Plaintiffs' and Class Member's PII. *Id* ¶ 54. Plaintiffs are a former employee and a former customer of MarineMax, respectively. *Id* ¶¶ 26, 146, 159. Plaintiffs and Class Members are legally required to provide certain PII both to obtain employment and to purchase a boat . *Id* ¶¶ 55, 56.

On or about July 16, 2024, Defendant began sending Plaintiffs and other Data Breach victims a Notice of Data Incident letter (the "Notice Letter"), informing them:

> **What Happened.** On March 10, 2024 we discovered that we were the victim of a cybersecurity incident that impacted a limited portion of our information environment. Based on our investigation of the incident, we determined that an unauthorized third party obtained access to our environment. Our investigation recently concluded, and it was determined that the unauthorized third party acquired some of our data, which contained your personal information.

> **What Information Was Involved.** The impacted files contained your personal information, including your social security number, driver's license number, and name.[3]

*Id.* ¶ 31. MarineMax estimated the PII of approximately 123,494 individuals—including Plaintiffs and Settlement Class Members—was potentially impacted. *Id.* ¶ 7.

## A.    Procedural History

On July 29, 2024, Sandro Lomedico, on behalf of himself and similarly situated individuals, filed a putative class action complaint against MarineMax, Inc. in the Middle District of Florida, Tampa Division, Case No. 8:24-cv-01784 (the "Lomedico Action") ECF No. 1. Subsequently, on August 20, 2024, Kevin J. Niblock, on behalf of himself and similarly situated

---

[3]    The "Notice Letter". A sample copy is available at https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/07822acb-6bb3-4bf8-8ea6-9a7b98f106c0.html

individuals, filed a putative class action complaint against MarineMax, Inc. in the Middle District of Florida, Tampa Division, Case No. 8:24-cv-01955 (the "Niblock Action"). *See* Joint Declaration of Class Counsel ("Joint Decl.") ¶¶ 4-5, attached as ***Exhibit B***.

On August 27, 2024, Plaintiffs filed a Joint Motion to Consolidate Actions, Appoint Interim Counsel, and Set Scheduling Deadlines. ECF No. 15. On September 25, 2024, the Court entered an Order consolidating the two actions and appointing Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC and Brittany Resch of Strauss Borrelli, PLLC as interim class counsel. *See* ECF No. 17.

Plaintiffs filed their Consolidated Complaint on October 1, 2024. ECF No. 19. Thereafter the Parties began discussing the possibility of early resolution. On October 30, 2024, the Parties filed a Joint Motion to Stay Proceedings. *See* ECF No. 23. On November 1, 2024, the Court entered an Order granting the Parties Joint Motion to Stay and directing the Parties to file a Joint Status report by January 6, 2025. *See* ECF No. 24.

To enable productive and good faith settlement discussions, Plaintiffs informally requested specific information from Defendant, to which Defendant responded by providing information related to, among other things, the nature and cause of the Data Incident, the number and geographic locations of individuals that received notice of the Data Incident, and the specific type of

information potentially impacted in the Data Incident. Joint Decl. ¶ 8. Plaintiffs and Class Counsel reviewed key information, which, in consultation with their data security experts, allowed them to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. Id. ¶ 17.

Over the following weeks, the Parties continued to negotiate certain terms of the Agreement, including the terms of the Releases, the Claims Administrator and its respective duties, the Notice Program and Notices, the Claim process and Claim Forms, and proposed schedule of post-settlement events. *Id.* ¶ 11X. During this time, the Parties worked diligently to finalize the terms of the Agreement and ancillary documents. *Id*. The Agreement was executed on January 30, 2025. *Id*. The Parties did not discuss attorneys' fees and costs until after they reached agreement on all material Settlement terms. *Id.* ¶ 10.

On January 3, 2025, the Parties filed Joint Status Report informing the Court that they had entered into a tentative Settlement and requesting the Court allow the Parties 45 days to finalize the terms of the Settlement and file a Motion for Preliminary Approval of the Class Action Settlement. *See* ECF No. 25. This Court granted this request, staying this action until February 20, 2025. ECF No. 26.

## III.    MATERIAL TERMS OF THE SETTLEMENT

A.    **Settlement Class -** Plaintiffs seek Preliminary Approval of the Settlement on behalf of the following Settlement Class:

> All natural persons residing in the United States who received a Notice Letter from MarineMax, Inc. or Newcoast as a result of the Data Incident.

S.A. ¶ 1(W).  Excluded from the Settlement Class are attorneys and employees of Settlement Class Counsel, any judicial officer to whom this case is assigned, and persons who validly exclude out of the settlement by following the procedures set forth herein.

B.    **Gross Settlement Amount -** The Settlement provides for a non-reversionary $1,018,825.50 all cash Gross Settlement Amount. *Id.* ¶ 1(n). The Gross Settlement Amount will be used to pay: (1) Settlement Class Member benefits; (2) any attorneys' fees and costs awarded by the Court to Class Counsel; and (3) all Settlement Administration Costs. *Id.*

C.    **Settlement Class Member benefits -** When submitting a Claim, Settlement Class members may elect to receive a Cash Payment and also Identity Monitoring. *Id.* ¶¶ 3.5-3.8. If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims against Defendants without receiving a Settlement Class Member benefit. *Id.* ¶ 8.7.

**Monetary Benefits -** Settlement Class Members are eligible to collect

for one or more of the following settlement benefits. *Id.* ¶ 3.4. Authorized Claimants will be able to submit a claim for reimbursement for actual identity fraud losses reasonably traceable to the Data Incident ("**Actual Identity Theft Losses**") of up to $5,000 per individual Authorized Claimant. *Id.* ¶ 3.5. Authorized Claimants will be able to submit a claim for reimbursement for out-of-pocket losses reasonably traceable to the Data Incident ("**Out-of-Pocket Expenses**") of up to $2,000 per individual Authorized Claimant. *Id.* ¶ 3.6. Authorized Claimants shall be entitled to a *pro rata* share ("**Cash Payment**") of the Net Settlement Fund remaining after the Actual Identity Theft Losses, Out-of-Pocket Expenses, and Credit Monitoring are deducted from the Net Settlement Fund. *Id.* ¶ 3.8. Cash Payments will be subject to a *pro rata* increase from the Net Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Net Settlement Fund. *Id.*

**Identity Monitoring -** Authorized Claimants who did not elect to receive 2-years of credit monitoring and identity theft protection previously offered by Defendant in the notice letter sent to Settlement Class Member in connection with the Data Incident may elect up to three years of one-bureau Credit Monitoring that will provide the following benefits: one-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully-managed identity recovery services. *Id.* ¶ 3.7. Authorized Claimants who did elect to receive 2-years of credit monitoring and

identity theft protection previously offered by Defendant in the notice letter sent to Settlement Class Member in connection with the Data Incident may elect up to an additional year of one-bureau credit monitoring that will provide the following benefits: one-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully-managed identity recovery services. *Id*.

   **D.    Settlement Class Notice -** The Parties have agreed on a comprehensive Notice Program, which includes a Long Form Notice, Postcard Notice, a Settlement Website, and Settlement telephone line. *Id*. ¶¶ 1(r), 6.1-6.7. The Claims Administrator shall send Postcard Notice by regular mail for each person on the Class Member Contact List for whom a mailing address can be located. Id. ¶ 6.3. The Postcard Notice will consist of a double post card with a tear off claim form included and a QR code that Class Settlement Members can scan to link directly to the Claim Form on the Settlement Website. *Id*. If any Postcard Notice is returned as undeliverable, the Claims Administrator will perform a skip-trace and/or other customary address searches in an attempt to locate a valid address and, if a new mailing address is obtained, re-mail the Postcard Notice to that updated mailing address. *Id*. MarineMax has mailing addresses for approximately 95% of Settlement Class Members. *Id*. ¶ 6.3. The Postcard Notice, along with the Long-Form Notice, in forms similar to those attached to the Settlement Agreement as Exhibits B and C, will inform

the Settlement Class of the general terms of the Settlement, including a description of the Action, the identity of the Settlement Class, and what claims will be released. *Id*. Exs. B, C.

Notice shall also be published on the Settlement Website. *Id*. ¶ 6.5. Settlement Class members may review the Long Form Notice, key documents and dates on the Settlement Website, and get answers to frequently asked questions by calling a toll-free telephone number. *Id*. ¶¶ 11.2, 6.5, 4.1. The Settlement Website shall include, among other information: a description of the material terms; how to submit a Claim Form; the Claim Form Deadline; the Settlement Class member exclusion deadline; the deadline for Settlement Class Members to object to the Settlement and/or Class Counsel's Application for Attorneys' Fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access the Agreement and other related documents and information. *Id*. ¶ 6.5. Additionally, exclusion procedures will be explained, as well as how Settlement Class Members may exercise their right to object to the proposed Settlement and/or Class Counsel's Application for Attorneys' Fees and Costs at the Final Approval Hearing. *Id*. ¶¶ 1(cc), 6.5.

**E.    Claim Submission Process -** To receive Settlement Class Member benefits, Settlement Class Members must accurately and timely submit a Claim Form by the Claim Form Deadline. *Id*. ¶¶ 8.1-8.7. Claim Forms

may be submitted online through the Settlement Website or through U.S. Mail sent to the Claims Administrator at the address designated on the Claim Form. *Id*. ¶¶ 8.1, 8.3. The Claims Administrator will review all Claim Forms to determine their validity, eligibility, and the type and amount of the Cash Payment to which the Settlement Class Member may be entitled. Id. ¶ 8.4. The Claims Administrator will provide Settlement Class Members who submitted Valid Claims with their Settlement Class Member benefits no later than 45 days after the Effective Date. *Id*. ¶ 11.1. Cash Payments will be made electronically or by paper check, and an email will be sent to Settlement Class Members electing Identity Monitoring with activation instructions. *Id*. Greater detail on the Claims process is in Section 8 of the Agreement. *See Id*. §8.

  **F. Disposition of Remainder** – After all authorized payments to the Claims Administrator, Authorized Claimants, and Settlement Class Counsel  have been made as described herein, and no sooner than 150 calendar days after the Settlement Effective Date, any remaining portion of the Gross Settlement Amount shall be delivered by the Claims Administrator to Habitat for Humanity Tampa Bay Gulfside, if so provided in the Final Approval Order and Judgment or, if not so provided, otherwise distributed in accordance with the Final Approval Order and Judgment. *Id*. ¶ 12.

  **G. Claims Administrator** – Kroll Settlement Administration, the proposed Claims Administrator, is a well-respected and reputable third-party

administrator that has significant experience with data breach settlements. Id. ¶ 1(e); Joint Decl. ¶ 13. The Claims Administrator shall effectuate the Notice Program, handle the Claims process, administer the Gross Settlement Amount, and distribute the Settlement Class Member benefits to Settlement Class Members. S.A. § 4. The Claims Administrator shall administer the process of notifying the Settlement Class; receiving, processing and paying claims, Settlement Class Counsel's approved attorneys' fees and costs; opening and maintaining bank accounts and maintaining the Gross Settlement Amount and Net Settlement Fund; complying with all tax-reporting obligations such as issuing and mailing to Settlement Class Members any necessary United States Internal Revenue Service 1099 Forms; obtaining any necessary information from Settlement Class Counsel, the Settlement Class Representatives, and Authorized Claimants for tax reporting purposes; and carrying out any other duties necessary to administer the Class Action Settlement and/or to which the Parties otherwise agree in writing. *Id*. ¶ 4.1. The Claims Administrator shall ensure that the information that it receives from the Parties, their Counsel, and/or Settlement Class Members is secured and managed in such a way as to protect the security and confidentiality of that information from third parties, as described in Section 7 of the Settlement Agreement. *Id*.

H.    **Exclusion and Objection Procedures -** Consistent with the

Settlement's exclusion procedures, the Long Form Notice details that Settlement Class members will have until 60 calendar days after the Notice Deadline to exclude themselves from the Settlement Class (the "Exclusion Deadline") by sending a signed letter by first class mail to the Claims Administrator containing: (1) the title of the Consolidated Action; (2) the full name, address, telephone number, and email address of the person requesting exclusion; and (3) a statement that he or she requests exclusion from the Settlement Class. *Id.* ¶ 10.1. Any Settlement Class member who does not timely and validly request to exclude shall be bound by the terms of this Agreement, even if that Settlement Class Member does not submit a Claim Form. *Id.* ¶ 8.7.

The Agreement and Long Form Notice also specify how Settlement Class Members may object to the Settlement and/or the Application for Attorneys' Fees and Costs. *Id*. § 9. Objections must be filed with the Court, and served by first class mail on Defense Counsel and Settlement Class Counsel within 60 calendar days after the Notice Deadline to object to the Settlement (the "Objection Deadline"). *Id*. The objection must also set forth: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the five years

preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees and Costs; (e) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years; (f) any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity; (g) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (h) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (i) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (j) the

14

objector's signature (an attorney's signature is not sufficient). *Id.* ¶ 9.1. Class Counsel and/or Defendants' Counsel may conduct limited discovery on any objector or objector's counsel. *Id.* ¶ 9.2.

**I.    Release of Claims -** Plaintiffs and Settlement Class Members who do not timely and validly request exclusion from the Settlement Class will be bound by the terms of the Settlement, including the Releases that discharge the Released Claims against the Released Parties. *See id.* § 13. The Released Claims are narrowly tailored and only address claims arising out of or relating to the Data Incident. *Id.*

**J.    Attorneys' Fees and Costs -** The amount of any attorneys' fees and costs shall be determined by the Court. Class Counsel shall apply to the Court for an award of attorneys' fees of up to 33.33% of the Gross Settlement Amount, plus reimbursement of costs. *Id.* ¶ 3.2. The attorneys' fees and costs will be formally sought in the Application for Attorneys' Fees and Costs filed no later than 45 days after the Notice Deadline. *Id.* The Settlement is not contingent on approval of the requests for attorneys' fees and costs, and if the Court denies the requests or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 3.2. The Notice will advise the Settlement Class of the amounts of attorneys' fees that Class Counsel intends to seek. *Id.* § 6, Exs. B and C.

**V.    ARGUMENT**

A.      **The Settlement Class Should Be Certified.**

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To certify a class, "[t]he class representative must have standing to sue and the proposed class must be adequately defined and clearly ascertainable." *DeSouza v. AeroCare Holdings LLC*, No. 6:22-CV-1047-RBD-LHP, 2023 WL 5434712, at *2 (M.D. Fla. Aug. 7, 2023), *report and recommendation adopted*, No. 6:22-CV-1047-RBD-LHP, 2023 WL 5432302 (M.D. Fla. Aug. 23, 2023) (citations omitted). After finding the Plaintiffs have standing to bring their suit, Plaintiffs must satisfy all requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy), and one of the requirements of Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3), requiring common questions of law or fact to predominate over any individual issues and class treatment to be the superior method for efficiently handling the case. Fed. R. Civ. P. 23(b)(3). These requirements are met for settlement purposes.

1.      **Standing** – A plaintiff must demonstrate Article III standing to pursue each of the claims asserted in the complaint. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff must establish that he or she: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). Standing exists when a plaintiff's sensitive personal information is allegedly accessed and exfiltrated in a data breach. *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 796367, at *4 (S.D. Fla. Mar. 15, 2022); *see also Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 17477004, at *5 (S.D. Fla. Dec. 5, 2022). There is no requirement that Article III standing be proved with evidentiary support at the settlement approval stage. *See In re Equifax Inc. Customer Data Sec. Incident Litig.*, 999 F.3d 1247, 1261 n.8 (11th Cir. 2021).

Here, both Plaintiffs have standing because, like the Plaintiffs in *Desue*, their PII was allegedly impacted in the Data Incident when an unauthorized third party gained access to Defendant's system's files containing its customers' and employees' sensitive and confidential information. Because both Plaintiffs and all Settlement Class Members received notice that their PII may have been impacted in the Data Incident, they are at an increased risk of identity theft or fraud. *See In re Equifax*, 999 F.3d at 1262 (finding consumers had standing to bring action against consumer reporting agency arising out of

data privacy breach, where they alleged hackers obtained their personal information, identity thieves could use their information to create fake identities, fraudulently obtain loans and tax refunds, and destroy their credit-worthiness, they remained subject to pervasive, substantial, and imminent risk of identity theft and fraud, some consumers had already suffered actual identity theft and resulting injuries, and other consumers had expended resources to mitigate risk of identity theft). This injury is consistent for all Settlement Class Members.

Moreover, it is well established that the lost benefit of a bargain is sufficient to confer standing. *In re Mednax Servs., Inc., Customer Data Sec. Incident Litig.*, 603 F. Supp. 3d 1183, 1205 (S.D. Fla. 2022) ("[W]here plaintiffs allege that 'there was an explicit or implicit contract for data security, that plaintiffs placed value on that data security, and that [d]efendants failed to meet their representations about data security,' courts have consistently held these allegations sufficient to allege injuries in fact.") (internal citation omitted); *see also Kostka v. Dickey's Barbecue Rests., Inc.*, No. 3:20-CV-03424-K, 2022 WL 16821685, at *4 (N.D. Tex. Oct. 14, 2022) ("The Court finds that the Settling Plaintiffs have properly alleged Article III standing for all potential class members on the basis of their breach-of-an-implied contract claim."), *report and recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022). This injury applies to all Settlement Class Members. Plaintiffs

therefore have standing to assert their claims.

      **2.**    **Ascertainability -** Ascertainability is an implied prerequisite of Rule 23. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). Before a district court can consider whether a potential class satisfies Rule 23(a), it must find the proposed class is "adequately defined and clearly ascertainable." *Id.* (citation omitted). Defining a class and ascertainability typically involve the same inquiry because, without an adequate definition for a proposed class, a district court cannot ascertain who belongs in the class. *Id.* For purposes of class certification, "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Id.* at 1304. An adequately defined class thus should be defined by objective criteria with its members identifiable. *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-cv-41-JLB-MRM, 2021 WL 6105590, at *10–11 (M.D. Fla. Dec. 23, 2021). Here, the Settlement Class is adequately defined and clearly ascertainable because the Settlement Class definition contains sufficient objective criteria to allow an individual to determine whether he or she is a member of the Settlement Class—i.e., whether they were sent notification from Defendant that their PII was potentially compromised as a result of the Data Incident. *See* S.A. ¶ 1(w).

      **3. Rule 23(a) -** Under Rule 23(a), the Court must determine whether: (1) the class is so numerous that joinder of all members is impracticable; (2)

there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Each requirement is satisfied here.

**Numerosity -** Class sizes exceeding 40 are typically sufficient to satisfy this requirement. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Here, the joinder of over 123,000 Settlement Class members would certainly be impracticable, *see* Joint Decl. ¶ 12, and thus numerosity is satisfied. *See DeSouza*, 2023 WL 5434712, at *4 (numerosity met for 32,035 class members).

**Commonality -** This requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Courts in this Circuit have previously addressed this requirement in the context of data breach class actions and found it satisfied. *See, e.g., In re Overby-Seawell Co. Customer Data Sec. Incident Litig.*, No. 1:23-MD-03056 (N.D. Ga.) ("*Overby-Seawell*"), ECF No. 88 at 5; *Desue*, 2022 WL 17477004, at *4; *see also In re Equifax*, 999 F.3d at 1274-75, 1277 (affirming district court's certification of class, including finding of commonality). Here, as in the cases

cited above, the claims turn on whether Defendant's security environment was adequate to protect the Settlement Class's PII. Resolution of that inquiry revolves around evidence that does not vary between members, and so can be fairly resolved—at least for purposes of settlement—for all Settlement Class Members at once.

**Typicality -** The commonality and typicality analyses often overlap, as they are both focused on "whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Prado-Steiman ex rel. Prado*, 221 F.3d at 1278. Here, there is a nexus between Plaintiffs' and other Settlement Class Members' claims since they each concern Defendant's alleged failure to protect sensitive PII in connection with the Data Incident. Thus, Plaintiffs' claims are typical of other Settlement Class Members' claims because they are based on the same legal theories and underlying events.

**Adequacy of Representation -** "To determine whether the adequacy requirement is met, we ask: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *In re Equifax*, 999 F.3d at 1275 (quotation omitted). "This encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute

the action." *DeSouza*, 2023 WL 5434712, at *5 (quotation omitted).

Here, Plaintiffs' interests are coextensive with those of the Settlement Class. Like all Settlement Class Members, Plaintiffs have claims against Defendant arising from the Data Incident that allegedly impacted their PII. Plaintiffs were similarly injured by Defendant's allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiffs and the Settlement Class they seek to represent have the same interests in recovering damages.

Further, Plaintiffs have also diligently and adequately prosecuted this action through Settlement Class Counsel by, among other things, reviewing filings, promptly providing documents and information to Settlement Class Counsel, acting in the best interest of the Settlement Class, and accepting the class-wide Settlement. Joint Decl. ¶ 15.

As for Settlement Class Counsel, they are highly qualified and have a great deal of experience litigating data privacy class actions. *See* id. ¶¶ 25-28 , and Ex. 1 – 2; ECF No. 15 (Motion to Consolidate and Appoint Interim Class Counsel) at 15-20. Settlement Class Counsel have litigated this Action, including evaluating the claims, preparing comprehensive pleadings, serving informal discovery, consulting with data security experts, complying with Court orders and requirements, and participating in settlement negotiations

that ultimately resulted in this Settlement. Joint Decl., ¶¶ 6-9, 11. Accordingly, Plaintiffs and Settlement Class Counsel will adequately protect the Settlement Class.

4. **Rule 23(b)(3)** – Rule 23(b)(3) requires the court to find "questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When assessing predominance and superiority, the court may consider the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, … for the proposal is that there be no trial.").

**Predominance** – "In reviewing predominance, the court must determine whether the common issues are more prevalent or important than the individual issues." *Junior v. Infinity Ins. Co.*, No. 6:18-cv-1598-Orl-78EJK, 2020 WL 8254235, at *5 (M.D. Fla. June 5, 2020) (citation omitted). A common question is one that "can be resolved by the same evidence for each class member, or it can be proven by generalized, class-wide proof." *Id.*

Common issues clearly predominate here. This case is like *Desue*, in which the Southern District of Florida held that:

Rule 23(b)(3)'s predominance requirement is satisfied because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. As an example, each Class Member's claims are based on the alleged failure of the Defendants to appropriately maintain the confidentiality of their PII, which they allege was caused by the same actions and inactions of Defendants. Other key, common factual and legal questions predominate in this matter, including whether Defendants' data systems and security policies and practices were adequate and reasonable; the extent of Defendants' knowledge regarding any potential vulnerabilities in its data systems; and whether Plaintiffs and the Class Members suffered losses because of Defendants' actions.

*Desue*, 2022 WL 17477004, at *5. Indeed, common factual and legal questions predominate over individual questions here, based on Defendant's alleged failure to safeguard all Settlement Class Members' PI from unauthorized access. The answers to these key questions will be the same for each Settlement Class Member because all of them had their PII impacted in the Data Incident. As such, the predominance requirement is readily satisfied.

**Superiority** – The superiority analysis involves an examination of "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (internal quotation omitted). A class action is the only reasonable method to fairly and efficiently adjudicate Settlement Class Members' claims. *See Tweedie v. Waste Pro of Fla., Inc.*, No. 8:19-cv-1827-TPB-

AEP, 2021 WL 3500844, at *7 (M.D. Fla. May 4, 2021) ("[G]iven the large number of purported class members, the similarity of the claims of all class members, and the relatively small potential recovery in individual suits, proceeding as a class action lawsuit is superior over any other forms of litigation."). Indeed, Courts in this Circuit recognize the superiority of the class mechanism in the context of data breach litigation. *See, e.g., Overby-Seawell*, ECF No. 88 at 6 (finding class action and class settlement superior to other methods available); *Desue*, 2022 WL 17477004, at *5 (finding class treatment superior for settlement purposes).

Having satisfied the requirements of Rules 23(a) and 23(b)(3), the Settlement Class should be preliminarily certified for settlement purposes.

### B.    The Settlement Should be Preliminarily Approved.

After determining settlement class certification is likely, the Court must then determine whether the settlement is worthy of preliminary approval and providing notice to the settlement class. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *DeSouza*, 2023 WL 5434712, at *3 (quoting *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011)). The court may approve the settlement if it is "fair, reasonable, and adequate" based on the following factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arms' length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In addition, courts in the Eleventh Circuit must also consider the following "*Bennett*" factors: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Settlement warrants Preliminary Approval under the factors set forth in Rule 23(e)(2) and *Bennett*.

### 1.    Rule 23(c)(2) is Satisfied.

**Adequacy of Representation (Rule 23(c)(2)(A))** – As this Court held in *Petersen v. Am. Gen. Life Ins. Co.*, 3:14-CV-100-J-39JBT, 2019 WL 11093816, at *5 (M.D. Fla. Oct. 22, 2019) (Davis, J.):

> In evaluating the adequacy of class counsel and the class representative, the Advisory Committee on the Federal Rules of Civil Procedure ("Committee") has instructed courts to consider whether class counsel and plaintiffs "had an adequate information base" before negotiating and entering into the settlement. *Id.* The proper inquiry is whether the plaintiffs and class counsel engaged in enough discovery to afford them an "adequate appreciation of the merits of the case[.]"

(footnote and additional citation omitted). Here, Plaintiffs are adequate representatives. Plaintiffs respective interests are coextensive and do not conflict with the interests of the Settlement Class. Joint Decl. ¶ 16. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class Members have no diverging interests. *Id.* Likewise, Settlement Class Counsel are experienced in complex class action litigation, including similar data breach actions, and they devoted substantial time and resources to vigorous litigation. *Id.* ¶¶ 17-28.

**The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B))** – The Settlement was reached in the absence of collusion and is the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake. *Id.* ¶ 8-11. Settlement Class Counsel thoroughly investigated and analyzed Plaintiffs' claims, engaged in informal discovery, and consulted with data security experts, enabling them to gain an understanding of the evidence related to central questions in the

Action and preparing them for well-informed settlement negotiations. *See id.* ¶¶ 6-9, 11; *see also Kuhr v. Mayo Clinic Jacksonville*, 530 F. Supp. 3d 1102, 1115 (M.D. Fla. 2021) ("Class Counsel had an adequate information base upon which to conduct negotiations."). Moreover, attorneys' fees and costs were not discussed until the Parties agreed to all other material Settlement terms. *Id.* ¶ 10. For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement. *Bennett*, 737 F.2d at 986.

**The Adequacy of the Settlement Relief (Rule 23(e)(2)(c))** – Although Plaintiffs believe the claims asserted in the Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Settlement Class uncertain. The Settlement's fairness is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. Despite the risks involved with further litigation, the Settlement provides outstanding benefits, including Cash Payments and Identity Monitoring for all Settlement Class Members. *See In re Equifax*, 999 F.3d at 1273 ("Settlements also save the bench and bar time, money, and headaches"); *Petersen*, 2019 WL 11093816, at *7 (recognizing delay and risk of defendant prevailing as weighing in favor of approving settlement). Also, the

Claim Form submission process and distribution of Settlement Class Member benefits is fair, convenient, and effective. Settlement Class Members will promptly receive Cash Payments by electronic means or paper check issued by the Claims Administrator and Identity Monitoring, if elected. The Claims Administrator is highly qualified to manage the entire process. Joint Decl. ¶ 13. Furthermore, the attorneys' fees do not impact the other terms of the Settlement, as Settlement Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. *See James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm. Inc.*, No. 3:07-cv-598, 2012 WL 12952592, at *2 (M.D. Fla. July 30, 2012) (because agreement as to amount of attorneys' fees "was not reached until after a settlement had been reached in principle on its other terms and that the agreement was not the product of collusion or fraud[,]" it was entitled to "substantial weight"). The Settlement, including disbursement of the Settlement Class Member benefits, is not contingent on approval of the attorneys' fee award to Settlement Class Counsel. S.A. ¶ 3.2. Thus, subject to the Court's approval, the proposed attorneys' fees award is also fair. Finally, the Parties' agreements are all documented in the Agreement. Joint Decl. ¶ 11.

**The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(c)** – All Settlement Class Member are given an equal

opportunity to claim Settlement Class Member benefits under the Settlement. Specifically, each Settlement Class Member has the option to be reimbursed for Actual Identity Theft Losses or Out-of-Pocket Expenses, or they can elect to receive a Cash Payment. In addition, they may elect to receive Identity Monitoring.

### 2. The *Bennett* factors support Preliminary Approval.

Although typically a consideration at the final approval stage, here, the *Bennett* factors still point towards preliminary approval. First, the benefits of settlement outweigh the risk of trial given the substantial relief that Settlement Class Members will be afforded, including Actual Identity Theft Losses, Out-of-Pocket Expenses, or a *pro rata* Cash Payment per Settlement Class Member, in addition to Identity Monitoring for 3 years (or 1 year for those who previously received 2 years of Identity Monitoring).

Second and third, the Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013) (considering the second and third *Bennett* factors together). In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs likely success at trial to determine if the settlement falls within the range of fair recoveries. *See, e.g.,*

*In re Equifax*, 999 F.3d at 1274 (affirming district court's decision that settlement was "fair, reasonable, and adequate because the settlement reflects relief the Court finds is in the high range of what could have been obtained had the parties continued to litigate."). Here, Settlement Class Members may submit Claims for Actual Identity Theft Losses up to $5,000.00 and/or Out-of-Pocket Expenses up to $2,000.00. SA. ¶¶ 3.5, 3.6. Alternatively, Authorized Claimants shall be entitled to a *pro rata* Cash Payment of the Net Settlement Fund remaining after the Actual Identity Theft Losses, Out-of-Pocket Expenses, and Credit Monitoring are deducted from the Net Settlement Fund. *Id.* ¶ 3.8. In addition, Authorized Claimants may also elect Identity Monitoring. *Id.* ¶ 3.7.

Fourth, continued litigation would be lengthy and expensive. Data breach litigation is often difficult and complex. Joint Decl. ¶¶ 19, 21. Although the Parties entered into a Settlement relatively early in litigation, the Settlement negotiations were hard-fought, and the Parties expended significant time and energy on this Action. *Id.* ¶ 9.

Fifth, whether there is any opposition to the Settlement is better considered at the Final Approval stage, after Notice has been provided to the Settlement Class and they are given the opportunity to object.

Sixth, despite resolving at an early stage of litigation, Plaintiffs have sufficient information to evaluate the merits and negotiate a fair, adequate,

and reasonable settlement. *See, e.g., Cotter v. Checkers Drive-In Restaurants, Inc.*, No. 8:19-cv-1386-VMC-CPT, 2021 WL 3773414, at *9 (M.D. Fla. Aug. 25, 2021) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case, engaged in full-day mediation, and engaged in post-mediation discovery); *Kuhr*, 530 F. Supp. 3d at 1115 (approving settlement early in the litigation without involvement of a neutral mediator). This case has been thoroughly investigated by counsel experienced in data breach litigation. Joint Decl. ¶¶ 3, 5, 6, 18, 25-26. Moreover, Settlement Class Counsel's informal exchange of discovery and months of negotiations has ensured a fair, reasonable, and adequate Settlement. *Id.* ¶ 8, 17.

Accordingly, the Court should find that the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class Members.

## C. The Court Should Appoint the Proposed Class Representatives, Settlement Class Counsel, and Claims Administrator.

Plaintiffs Sandro Lomedico and Kevin J. Niblock seek appointment as Class Representatives. Plaintiffs have cooperated with Settlement Class Counsel and assisted in the preparation of the complaints and in settlement of the Action. Joint Decl. ¶ 15. Moreover, Plaintiffs are committed to continuing to assist Settlement Class Counsel through Final Approval. *Id.* Because

Plaintiffs are adequate, the Court should appoint them as Class Representatives.

For the reasons previously discussed with respect to adequacy of representation, the Court should designate Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC and Brittany Resch of Strauss Borrelli PLLC as Settlement Class Counsel. Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Plaintiffs and the Settlement Class are represented by qualified and competent counsel who are leaders in the class action field and have extensive experience prosecuting and resolving complex class actions. Before commencing litigation, Settlement Class Counsel investigated the potential claims against Defendant, interviewed potential plaintiffs, and gathered information regarding the Data Incident. Joint Decl.

¶ 3, 5, 6, 18, 25-26. Settlement Class Counsel has devoted substantial time and resources to prosecuting this Action and will continue to do so. *Id.* ¶ 24.

Finally, the Parties have agreed that Kroll shall be the Settlement Administrator. Kroll has a long history of successful administrations in class actions. Joint Decl. ¶ 13.

### D.   The Notice Program Contains the Best Notice Practicable.

Under Rule 23(c), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(e)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Moreover, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

The Notice Program satisfies the foregoing criteria. The Parties negotiated the form of the Notices with the help of the Claims Administrator,

34

Kroll. The Notices will be disseminated to all persons who fall within the definition of the Settlement Class whose names and addresses can be identified with reasonable effort from Defendant's records and through databases tracking nationwide addresses and address changes. In addition, Kroll will administer the Settlement Website containing relevant information about the Settlement. Further, the Notices includes, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Exclusion Period for Settlement Class Members to exclude out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. S.A. ¶¶ 6.1-6.7. Finally, the Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Settlement Class Counsel may apply to the Court for an award of attorneys' fees of up to 33.33% of the Gross Settlement Amount, plus reimbursement of costs. *Id*. Thus, the Court should approve the Notice Program, including the form and content of the Notices. *See id*. S.A. Exs. A-C.

### E.    Proposed Schedule of Events

Plaintiffs respectfully propose the following schedule for the Court's

review and approval. If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Final Approval Hearing for the week of June 1st, 2025, or such later date available on the Court's calendar.

| | |
|---|---|
| Last day for Claims Administrator to send Settlement Class Notice to Settlement Class Members ("Notice Deadline") | **Within 30 days of Preliminary Approval Order** |
| Deadline for filing Class Counsel's Application for Attorneys' Fees and Costs | **45 days after the Notice Deadline** |
| Exclusion Period Ends | **60 days after the Notice Deadline** |
| Objection Period Ends | **60 days after the Notice Deadline** |
| Claim Form Deadline | **90 calendar days after the Notice Deadline** |
| Deadline for filing Motion for Final Approval | **15 days before the original date of Final Approval Hearing** |
| Final Approval Hearing | **Week of June 1st, 2025 (or such later date available on the Court's calendar).** |

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs and Settlement Class Counsel respectfully request that the Court enter the proposed order, which: (1) Preliminarily approves the Settlement; (2) Certifies the Settlement Class for settlement purposes; (3) Approves the Notices and Notice Program, including the exclusion and objection procedures; (4) Approves the Claim Form and Claims process; (5) Appoints Plaintiffs as Class Representatives; (6) Appoints Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC and Brittany Resch of Strauss Borrelli PLLC as Settlement Class

Counsel; (7) Appoints Kroll as the Claims Administrator; (8) Schedules a date for the Final Approval Hearing; and (9) grant leave for Plaintiffs to submit a proposed order on Plaintiffs' Motion for Preliminary Approval.

## **LOCAL RULE 3.01(g) CERTIFICATION**

Plaintiffs have met and conferred with Defendant and Defendant does not oppose the relief requested in this Motion for Preliminary Approval.

Dated: February 3, 2025.　　　　　　Respectfully submitted,

*/s/ Mariya Weekes*
MARIYA WEEKES
Florida Bar No. 56299
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL 33134
Tel: (786) 879-8200
Fax: (786) 879-7520
Email: mweekes@milberg.com

Brittany Resch (*Pro Hac Vice*)
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
bresch@straussborrelli.com

*Counsel for Plaintiffs and*
*the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 3, 2025 the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

*/s/ Mariya Weekes*
Mariya Weekes
