## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |
|---|---|
| SANDRO LOMEDICO and KEVIN J. NIBLOCK, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MARINEMAX, INC., <br><br> Defendant. | Case No.: 8:24-cv-1784-MSS-AEP |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Fed. R. Civ. P. 23, Plaintiffs[1] respectfully submit this Unopposed Motion for Final Approval of Class Action Settlement, supported by the Joint Declaration of Class Counsel ("Joint Decl."), attached as ***Exhibit B***, and the Declaration of Andrea Dudinsky of Kroll, in Connection with Final Approval of Settlement ("Admin. Decl."), attached as ***Exhibit C***.

On February 13, 2025, this Court preliminarily approved the Settlement, which provides for substantial Settlement Class Member Benefits, including a non-reversionary, all cash $1,018,825.50 Settlement Fund, from which

---

[1] All capitalized terms used herein shall have the same meanings as those defined in the Settlement Agreement, attached as ***Exhibit A***.

Settlement Class members may elect to receive Cash Payments and Identity Monitoring. The Settlement Fund will be used to pay Settlement Class Member Benefits, all Claims Administration Costs, and any Court-awarded attorneys' fees and costs.

Plaintiffs and Class Counsel now move the Court for Final Approval and apply for an award of attorneys' fees and costs[2]. The Settlement satisfies all the criteria for Final Approval. Currently, there are no objections and only 1 Settlement Class member has requested exclusion from the Class. This overwhelmingly positive response affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. Class Counsel has fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe the proposed Settlement fairly resolves their respective differences. For all the reasons set forth herein, the Court should grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees and Costs.

## I.    INTRODUCTION AND PROCEDURAL HISTORY

MarineMax is a Florida-based company that sells boats and also offers financing, insurance, and educational programs. ECF No. 19, Consolidated Complaint, ¶ 2.

---

[2] Plaintiffs filed their Unopposed Application for Attorneys' Fees and Costs on April 22, 2025, and ask that the Court consider the Motion along with Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement. ECF No. 35.

MarineMax collected, and continues to collect, the PII of its employees and customers throughout its usual course of business operations. *Id* ¶ 4. MarineMax acquired, collected, and stored Plaintiffs' and Class Member's PII. *Id* ¶ 54. Plaintiffs are a former employee and a former customer of MarineMax, respectively. *Id* ¶¶ 26, 146, 159. Plaintiffs and Class Members are legally required to provide certain PII both to obtain employment and to purchase a boat. *Id* ¶¶ 55, 56.

On or about July 16, 2024, Defendant began sending Plaintiffs and other Data Breach victims a Notice of Data Incident letter (the "Notice Letter"), informing them:

> **What Happened.** On March 10, 2024, we discovered that we were the victim of a cybersecurity incident that impacted a limited portion of our information environment. Based on our investigation of the incident, we determined that an unauthorized third party obtained access to our environment. Our investigation recently concluded, and it was determined that the unauthorized third party acquired some of our data, which contained your personal information.
>
> **What Information Was Involved.** The impacted files contained your personal information, including your social security number, driver's license number, and name.[3]

---

[3] The "Notice Letter". A sample copy is available at https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/07822acb-6bb3-4bf8-8ea6-9a7b98f106c0.html

*Id.* ¶ 31. MarineMax estimated the PII of approximately 123,494 individuals—including Plaintiffs and Settlement Class Members—was potentially impacted. *Id.* ¶ 7.

On July 29, 2024, Sandro Lomedico, on behalf of himself and similarly situated individuals, filed a putative class action complaint against MarineMax, Inc. in the Middle District of Florida, Tampa Division, Case No. 8:24-cv-01784 (the "Lomedico Action") ECF No. 1. Subsequently, on August 20, 2024, Kevin J. Niblock, on behalf of himself and similarly situated individuals, filed a putative class action complaint against MarineMax, Inc. in the Middle District of Florida, Tampa Division, Case No. 8:24-cv-01955 (the "Niblock Action"). *See* Joint Declaration of Class Counsel in support of Plaintiffs' Unopposed Motion for Preliminary Approval ("MPA Joint Decl.") ¶¶ 4-5, attached as Exhibit B to Plaintiffs Motion for Preliminary Approval of Class Action Settlement, ECF No. 29-2.

On August 27, 2024, Plaintiffs filed a Joint Motion to Consolidate Actions, Appoint Interim Counsel, and Set Scheduling Deadlines. ECF No. 15. On September 25, 2024, the Court entered an Order consolidating the two actions and appointing Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC and Brittany Resch of Strauss Borrelli, PLLC as interim class counsel. *See* ECF No. 17.

Plaintiffs filed their Consolidated Complaint on October 1, 2024. ECF

No. 19. Thereafter the Parties began discussing the possibility of early resolution. On October 30, 2024, the Parties filed a Joint Motion to Stay Proceedings. *See* ECF No. 23. On November 1, 2024, the Court entered an Order granting the Parties Joint Motion to Stay and directing the Parties to file a Joint Status report by January 6, 2025. *See* ECF No. 24.

To enable productive and good faith settlement discussions, Plaintiffs informally requested specific information from Defendant to which Defendant responded by providing information related to, among other things, the nature and cause of the Data Incident, the number and geographic locations of individuals that received notice of the Data Incident, and the specific type of information potentially impacted in the Data Incident. MPA Joint Decl. ¶ 8. Plaintiffs and Class Counsel reviewed key information, which, in consultation with their data security experts, allowed them to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. *Id.* ¶ 17.

Over the following weeks, the Parties continued to negotiate certain terms of the Agreement, including the terms of the Releases, the Claims Administrator and its respective duties, the Notice Program and Notices, the Claim process and Claim Forms, and proposed schedule of post-settlement events. *Id.* ¶ 11. During this time, the Parties worked diligently to finalize the terms of the Agreement and ancillary documents. *Id.* The Agreement was

executed on January 30, 2025. *Id*. The Parties did not discuss attorneys' fees and costs until after they reached agreement on all material Settlement terms. *Id*. ¶ 10.

On January 3, 2025, the Parties filed a Joint Status Report informing the Court that they had entered into a tentative Settlement and requesting the Court allow the Parties 45 days to finalize the terms of the Settlement and file a Motion for Preliminary Approval of the Class Action Settlement. *See* ECF No. 25. This Court granted this request, staying this action until February 20, 2025. ECF No. 26.

Plaintiffs filed their Motion for Preliminary Approval on February 3, 2025, and the Court granted the motion on February 4, 2025. ECF No. 29, 30. The Notice Program has been completed in compliance with the Agreement and the Preliminary Approval Order, and the Claims process is ongoing. *See generally* Admin. Decl.; Joint Decl. ¶ 14. The Claims Deadline is June 13, 2025, Admin Decl. ¶ 14, and the deadlines by which to object or opt-out were May 14, 2025, *Id*. ¶ 17. As explained in greater detail below, only one request for exclusion was received, *see id*. ¶ 18, and the current claims rate is 4.71%, Admin. Decl. ¶ 15.

## II.    SUMMARY OF THE SETTLEMENT

    **A.**    **Settlement Class -** Plaintiffs seek Final Approval of the Settlement on behalf of the following Settlement Class:

> All natural persons residing in the United States who received a Notice Letter from MarineMax, Inc. or Newcoast as a result of the Data Incident.

S.A. ¶ 1(W).  Excluded from the Settlement Class are attorneys and employees of Settlement Class Counsel, any judicial officer to whom this case is assigned, and persons who validly opt out of the settlement by following the procedures set forth herein.

**B.    Gross Settlement Amount -** The Settlement provides for a non-reversionary $1,018,825.50 all cash Gross Settlement Amount. *Id.* ¶ 1(n). The Gross Settlement Amount will be used to pay: (1) Settlement Class Member benefits; (2) any attorneys' fees and costs awarded by the Court to Class Counsel; and (3) all Claims Administration Costs. *Id.*

**C.    Settlement Class Member benefits -** When submitting a Claim, Settlement Class members may elect to receive a Cash Payment and also Credit Monitoring. *Id.* ¶¶ 3.5-3.8. If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims against Defendant without receiving a Settlement Class Member benefit. *Id.* ¶ 8.7.

**<u>Monetary Benefits</u> -** Settlement Class Members are eligible to collect for one or more of the following settlement benefits. *Id.* ¶ 3.4. Authorized Claimants will be able to submit a claim for reimbursement for actual identity fraud losses reasonably traceable to the Data Incident ("**Actual Identity**

Theft Losses") of up to $5,000 per individual Authorized Claimant. *Id.* ¶ 3.5. Authorized Claimants will be able to submit a claim for reimbursement for out-of-pocket losses reasonably traceable to the Data Incident ("**Out-of-Pocket Expenses**") of up to $2,000 per individual Authorized Claimant. *Id.* ¶ 3.6. Authorized Claimants shall be entitled to a *pro rata* share ("**Cash Payment**") of the Net Settlement Fund remaining after the Actual Identity Theft Losses, Out-of-Pocket Expenses, and Credit Monitoring are deducted from the Net Settlement Fund. *Id.* ¶ 3.8. Cash Payments will be subject to a *pro rata* increase from the Net Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Net Settlement Fund. *Id.*

**Credit Monitoring -** Authorized Claimants who did not elect to receive 2-years of credit monitoring and identity theft protection previously offered by Defendant in the notice letter sent to Settlement Class Member in connection with the Data Incident may elect up to three years of one-bureau Credit Monitoring that will provide the following benefits: one-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully-managed identity recovery services. *Id.* ¶ 3.7. Authorized Claimants who did elect to receive 2-years of credit monitoring and identity theft protection previously offered by Defendant in the notice letter sent to Settlement Class Member in connection with the Data Incident may elect up to an additional year of one-bureau credit monitoring that will provide

the following benefits: one-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully-managed identity recovery services. *Id*.

**D.    Release of Claims -** Plaintiffs and Settlement Class Members who do not timely and validly request exclusion from the Settlement Class will be bound by the terms of the Settlement, including the Releases that discharge the Released Claims against the Released Parties. *See id*. § 13. The Released Claims are narrowly tailored and only address claims arising out of or relating to the Data Incident. *Id*.

**E.    Disposition of Remainder** – After all authorized payments to the Claims Administrator, Authorized Claimants, and Settlement Class Counsel have been made as described herein, and no sooner than 150 calendar days after the Settlement Effective Date, any remaining portion of the Gross Settlement Amount shall be delivered by the Claims Administrator to Habitat for Humanity Tampa Bay Gulfside, if so provided in the Final Approval Order and Judgment or, if not so provided, otherwise distributed in accordance with the Final Approval Order and Judgment. *Id*. ¶ 12.

**F.    Attorneys' Fees and Costs -** Class Counsel filed their Unopposed Motion for Attorney's Fees and Costs on April 22, 2025. ECF No. 35. The Notices advised the Settlement Class of the amount of attorneys' fees Class Counsel intended to request at Final Approval, and currently no Settlement

Class Member has objected to the amount requested. Joint Decl. ¶ 28.

## III.    NOTICE PROGRAM, CLAIMS, OPT-OUTS AND OJECTIONS

**Notice Program** - The Claims Administrator sent the CAFA Notices required by 28 U.S.C. § 1715. Admin. Decl. ¶ 4. The Claims Administrator implemented the Notice Program, which consisted of Postcard Notice to all Settlement Class members for whom a physical mailing address was available and a Long Form Notice, which is available on the Settlement Website and which the Settlement Administrator mailed to any Settlement Class member who requested it. *Id.* ¶¶ 10-13. The Settlement Administrator's Declaration details the process followed to mail Postcard Notices with Claim Form via first class mail to 123,032 Settlement Class members. *Id*. The Postcard Notices clearly and concisely summarized the Settlement and the legal rights of the Settlement Class members and directed Settlement Class members to visit the Settlement Website for additional information. *Id*. Postcard Notices returned as undeliverable were re-mailed to any new address available through USPS information or to better addresses that were found using a third-party address lookup service. *Id*. Upon successfully locating better addresses, Postcard Notices were promptly remailed to 8,642 Settlement Class members. *Id.* As of May 23, 2025, individual notice efforts have reached approximately 80.91% of the identified Settlement Class members. *Id.* ¶ 13. This reach rate is consistent with other court-approved, best-practicable notice programs and Federal

Judicial Center Guidelines, which state that a notice plan that reaches[4] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[5]

Additionally, a Long Form Notice and Claim Form were mailed on request via the toll-free telephone number or other means. *Id*. As of June 13, 2025, Kroll received 4,146 Claim Forms through the mail and 1,648 Claim Forms filed electronically. *Id* ¶ 15.

On March 7, 2025, the Claims Administrator established a dedicated Settlement Website (www.marinemaxsettlement.com) for Settlement Class members to obtain detailed information about the Action and review important documents, including operative complaint, Settlement Agreement, motion for preliminary approval, Preliminary Approval Order, Long Form Notice, Claim Form, Plaintiffs' application for attorneys' fees and costs, when available, Plaintiffs' motion for final approval of the Class Action Settlement, and allowed Settlement Class Members an opportunity to file a Claim Form online. *Id.* ¶ 9. This Motion for Final Approval will be posted upon filing. It also includes relevant dates, answers to frequently asked questions, opt-out and objection

---

[4] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

[5] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d ed. 2010).

instructions, contact information for the Settlement Administrator, and how to obtain other case-related information. *Id.*

On March 3, 2025, the Claims Administrator established a toll-free telephone number, (833) 421-7674, for Settlement Class Members to call and obtain additional information regarding the Class Action Settlement through an Interactive Voice Response ("IVR") system and through speaking with a live operator. *Id* ¶ 6. As of May 23, 2025, the IVR system has received 323 calls, and five (5) callers have been connected to a live operator. *Id.*

On March 3, 2025, Kroll designated a post office box with the mailing address *MarineMax Settlement,* c/o Kroll Settlement Administration LLC, P.O. Box 225391 New York, NY 10150-5391, to receive requests for exclusion, Claim Forms and correspondence from Settlement Class Members *Id.* ¶ 7.

**Claim Submission Process -** The timing of the Claim submission process was structured to ensure that all Settlement Class members had adequate time to review the Settlement terms, compile documents supporting their Claim, and decide whether to submit a Claim, opt-out of, or object to, the Settlement. Settlement Class members may continue to submit Claim Forms online or by mail prior to the Claim Form Deadline. *Id.* ¶ 14.

The Claim Form Deadline is June 13, 2025. *Id.* As of May 23, 2025, Kroll has received 4,146 Claim Forms through the mail and 1,648 Claim Forms filed electronically through the Settlement Website. *Id* ¶ *15.* These numbers are

preliminary. *Id.* Claim Forms are still subject to final audits, including full assessment of each Claim's validity and a review for duplicate submissions. *Id.* Class Counsel will update the Court at the Final Approval Hearing as to the number of Claims.

**Opt-Outs and Objections** - The Objection and Opt-Out Periods ended on May 14, 2025. *Id.* ¶ 17. As of May 14, 2025, the Settlement Administrator has received only 1 request for exclusion. Joint Dec. ¶ 28. The Parties are not aware of any objections. *Id.*

## IV.    ARGUMENT

### A.    The Settlement Class Should Be Certified, and the Appointments of Class Representatives, Class Counsel, and the Claims Administrator Should Be Affirmed.

The Motion for Preliminary Approval detailed the bases for certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3). In compliance with Fed. R. Civ. P. 23(e), the Court's Preliminary Approval Order details its findings for why it would be likely to certify the Settlement Class at the Final Approval stage, finding the following requirements were all met: standing, ascertainability, numerosity, commonality, typicality, adequacy of representation, predominance, and superiority. ECF No. 32. Nothing has changed since Preliminary Approval was granted and the Settlement Class was provisionally certified. Therefore, for brevity's sake, Plaintiffs do not repeat their arguments in support of Settlement Class certification and instead

incorporate their arguments from the Motion for Preliminary Approval by reference. [ECF No. 29].

Plaintiffs' appointment as the Class Representatives should be affirmed as they remain adequate representatives. For the same reasons the Court found them adequate under Fed. R. Civ. P. 23(a)(4), the Court should also affirm the designation of Mariya Weekes and Brittany Resch as Class Counsel. Federal Rule of Civil Procedure 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Class Counsel are qualified and competent leaders in the field with extensive experience prosecuting and resolving complex class actions, including data breach class actions. Before commencing litigation, they investigated the claims against Defendant, interviewed potential plaintiffs, and gathered information regarding the Data Incident. Joint Decl. ¶¶ 3, 5-6.

Finally, the Court should confirm its appointment of Kroll as the Claims

Administrator.

**B.    The Settlement Should be Finally Approved.**

The Preliminary Approval Order found the Court would be likely to finally approve the Settlement after considering and finding the Settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2) and the "*Bennett*" factors. [ECF No. 29 at 3].  Now, the Court should grant Final Approval considering those same factors, being able to now judge the Settlement Class's positive reaction to the Settlement with no objections and over 5,790 Claims to date (the Claim Form Deadline is not until June 13, 2025).

The Rule 23(e)(2) factors are:

(A) the class representatives and class counsel adequately represented the class;
(B) the proposal was negotiated at arms' length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

The *Bennett* factors include the following: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4)

the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

**Adequacy of Representation (Rule 23(e)(2)(A))** - The Court held in *In re Mednax Services, Inc., Customer Data Sec. Breach Litig.*, "the first factor heavily weighs in favor of granting preliminary approval because both Class Counsel and the Class Representative have adequately represented the Class." No. 21-MD-02994-RAR, 2024 WL 1554329, at *6 (S.D. Fla. Apr. 10, 2024). While litigation in *Mednax* proceeded to a later stage than here before the parties agreed to settlement, Class Counsel thoroughly investigated and analyzed Plaintiffs' claims. They also consulted data security experts, enabling them to gain an understanding of the evidence related to central questions in the Action and prepared them for well-informed settlement negotiations. *See Id.* ¶¶ 17-18; *see also Mednax*, 2024 WL 1554329 at *6. Class Counsel used informal discovery to learn what caused the Data Incident, and the Private Information impacted in the Data Incident, before engaging in extensive settlement negotiations. Joint Decl. ¶¶ 8, 17-18. Class Counsel used their experience in complex class action litigation, including similar data breach actions, and devoted substantial time and resources to vigorous litigation. *Id.*

Also, the Class Representatives have demonstrated their adequacy by (i)

having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Action. Joint Decl. ¶ 30. Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class. *Id.* ¶ 26. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class members have no diverging interests. *Id.*

**The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B) and *Bennett* Factors 5-6)** - The Settlement is without collusion and the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake. *Id.* ¶¶ 8-10. "The fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B)." *Mednax*, 2024 WL 1554329 at *6. Though the Settlement was reached at any early stage, the record reflects that this Action has been thoroughly investigated by counsel experienced in data breach litigation. Moreover, Class Counsel's informal exchange of discovery has ensured a fair, reasonable, and adequate Settlement. *See, e.g., Cotter v. Checkers Drive-In Restaurants, Inc.*, No. 8:19-cv-1386-VMC-CPT, 2021 WL 3773414, at *9 (M.D. Fla. Aug. 25, 2021)

(approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case, engaged in full-day mediation, and engaged in post-mediation discovery); *Kuhr v. Mayo Clinic Jacksonville*, 530 F. Supp. 3d 1102, 1115 (M.D. Fla. 2021) (approving settlement early in the litigation without involvement of a neutral mediator).

Currently there is no opposition to the Settlement and only 1 request for exclusion. Class Counsel will respond to objections before the Final Approval Hearing if any are submitted.

**The Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and *Bennett* Factors 1-4)** - Although Plaintiffs believe the claims asserted are meritorious and the Settlement Class would ultimately prevail at trial, continued, complex, and expensive litigation against MarineMax poses significant risks that make any recovery for the Settlement Class uncertain. Data breach class actions are risky. The Settlement's fairness is underscored by the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the litigation's expense and likely duration. *Id.* Given those risks, the Settlement provides outstanding benefits. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("Settlements also save the bench and bar time, money, and headaches"). *FultonGreen v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting that data breach class actions are "a risky field of

18

litigation because [they] are uncertain and class certification is rare")

The Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013); *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261 n.8 (11th Cir. 2021). In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries. *See, e.g., Equifax*, 999 F.3d at 1274 (affirming district court's decision that settlement was "fair, reasonable, and adequate because the settlement reflects relief the Court finds is in the high range of what could have been obtained had the parties continued to litigate."). Here, Authorized Claimants will be able to submit a claim for reimbursement for actual identity fraud losses reasonably traceable to the Data Incident ("**Actual Identity Theft Losses**") of up to $5,000 per individual Authorized Claimant. *Id.* ¶ 3.5. Authorized Claimants will be able to submit a claim for reimbursement for out-of-pocket losses reasonably traceable to the Data Incident ("**Out-of-Pocket Expenses**") of up to $2,000 per individual Authorized Claimant. S.A. ¶ 3.6. Authorized Claimants shall be entitled to a *pro rata* share ("**Cash Payment**") of the Net Settlement Fund remaining after the Actual Identity Theft Losses, Out-of-Pocket Expenses, and Credit

Monitoring are deducted from the Net Settlement Fund. *S.A.* ¶ 3.8. Joint Decl. ¶ 19. Also, Settlement Class members may elect Identity Monitoring. *Id*.

A few recent examples of approved data breach settlements from around the country, which demonstrate how the instant Settlement compares very favorably to other similar common fund data breach settlements, include: *Mednax* ($6,000,000 settlement for 2.7 million class members); *Summers v. Sea Mar 16 Comm. College*, No. 22-2-0073-7 SEA (Super. Ct. Wash.) ($4,400,000 settlement for 1.2 million class members); *Owens v. U.S. Radiology Specialists, Inc., et al.*, No. 22 CVS 17797 (Mecklenburg Cty., NC) ($5,050,000 settlement for 1.3 million class members); *In re Wright & Filippis, LLC Data Sec. Breach*, No. 2:22-cv-12908-SFC (E.D. Mich.) ($2,900,000 for 877,584 class members); and *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17- md-2807 (N.D. Ohio) ($4,325,000 settlement for 1.5 million class members). *Id*. ¶ 21.

Also, the Claim Form submission process and distribution of Settlement Class Member Benefits is fair, convenient, and effective. *Id*. ¶ 29. Settlement Class Members will promptly receive Cash Payments by electronic means or paper check and Identity Monitoring, if elected. The Claims Administrator is highly qualified to manage the entire process. *Id*. "Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all." *Mednax*, 2024 WL 1554329 at *7.

Finally, the Parties' agreements are all in the Agreement. Joint Decl. ¶ 11.

**The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D))** All Settlement Class members are given an equal opportunity to claim Settlement Class Member Benefits. Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Mednax*, 2024 WL 1554329 at *7. Further, the attorneys' fees do not impact the other Settlement terms, as Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after agreeing on all other material Settlement terms. The Settlement, including disbursement of the Settlement Class Member Benefits, is not contingent on approval of the attorneys' fee and costs award. Agreement ¶ 3.2.

Accordingly, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class members.

## C.    Notice Was Adequate and Satisfies Rule 23 and Due Process Requirements.

The Court-approved Notice Program carried out by the Settlement Administrator conforms with the procedural and substantive requirements of due process and Rule 23. Settlement Class members received Notice of the settlement and have the opportunity to be heard and participate in the Action. See Fed. R. Civ. P. 23(c)(2)(B). The Court exercised its discretion to approve a

reasonable Notice Program. As the Court held when granting Preliminary Approval, the Postcard Notice and Long Form Notice posted on the Settlement Website is the best notice practicable under the circumstances and constitutes due and sufficient notice of the Settlement to all Class Members. [ECF No. 30 at 5]. The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The Notices included, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day to opt-out of the Settlement Class; the last day to object to the Settlement and/or Application for Attorneys' fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Admin. Decl., Attachments. The Notice Program also included a toll-free number to ask Settlement-related questions and the Settlement Website containing relevant Settlement Information. Finally, the Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of costs. *Id.* ¶ 6.4.

## V.    APPLICATION FOR ATTORNEYS' FEES AND COSTS

Pursuant to the Settlement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel filed their Unopposed Application for Attorney's Fees and Costs on April 22, 2025. ECF No. 35.

## V.    CONCLUSION

Plaintiffs and Class Counsel respectfully request this Court enter an Order: (1) granting Final Approval to the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) confirming the appointment of Plaintiffs as Class Representatives; (4) confirming the appointments of Mariya Weekes and Brittany Resch as Class Counsel; (5) awarding Class Counsel $339,268.90 for attorneys' fees and $576.25 for litigation costs; (6) approving payment of the Claims Administration Costs; (7) overruling timely objections, if any; and (8) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Plaintiffs have met and conferred with Defendant and Defendant does not oppose the relief requested in this Motion for Final Approval of Class Action Settlement.

Dated: May 30, 2025.                    Respectfully submitted,

*/s/ Mariya Weekes*
MARIYA WEEKES
Florida Bar No. 56299
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL 33134
Tel: (786) 879-8200
Fax: (786) 879-7520
Email: mweekes@milberg.com

Brittany Resch (*Pro Hac Vice*)
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
bresch@straussborrelli.com

*Counsel for Plaintiffs and*
*the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Mariya Weekes, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 30th day of May, 2025.         <u>*/s/ Mariya Weekes*</u>
                                                              MARIYA WEEKES