UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SANDRO LOMEDICO and KEVIN J.
NIBLOCK, on behalf of themselves and
all others similarly situated,**

      **Plaintiffs,**

**v.**                                  **Case No: 8:24-cv-1784-MSS-AEP**

**MARINEMAX, INC.,**

      **Defendant.**

_____

## ORDER

**THIS CAUSE** comes before the Court for consideration of Plaintiffs'
Unopposed Motion for Final Approval of Class Action Settlement. (Dkt. 36) The
terms of the proposed class action settlement are set forth in the proposed settlement
agreement and accompanying exhibits attached as Exhibit 1 to Plaintiffs' Motion (the
"Settlement Agreement"). (Dkt. 36-1) Also before the Court is Plaintiffs' Unopposed
Application for Attorneys' Fees and Costs. (Dkt. 35) Pursuant to Federal Rule of Civil
Procedure 23, Plaintiffs request the Court finally approve the Settlement Agreement
and the proposed attorneys' fees award. The Court held a hearing on June 17, 2025 to
determine the fairness, reasonableness, and adequacy of the Settlement Agreement.
Counsel for both Parties appeared at the hearing via Zoom. Upon consideration of all

relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Plaintiffs' Motions.

## I.    BACKGROUND

On July 29, 2024, Plaintiff Sandro Lomedico filed a putative class action complaint against Defendant MarineMax, Inc. on behalf of himself and similarly situated individuals, Case No. 8:24-cv-01784 (the "Lomedico Action"). (Dkt. 1) Subsequently, on August 20, 2024, Plaintiff Kevin J. Niblock also filed a putative class action complaint against MarineMax, Inc., Case No. 8:24-cv-01955 (the "Niblock Action"). On September 25, 2024, the Court entered an Order consolidating the two actions. (Dkt. 17)  Plaintiffs filed their Consolidated Complaint on October 1, 2024. (Dkt. 19)

In the Consolidated Complaint, Plaintiffs allege Defendant MarineMax is a Florida-based company that sells boats and offers financing, insurance, and educational programs. (Id. at ¶ 2) Defendant allegedly collects the personally identifiable information ("PII") of its employees and customers in the usual course of its business. (Id. at ¶ 4) Plaintiff Lomedico, a former customer of Defendant, and Plaintiff Niblock, a former employee of Defendant, allege they were legally required to provide certain PII to purchase a boat from Defendant and to obtain employment with Defendant, respectively. (Id. at ¶¶ 26, 55, 56, 146, 159)

Plaintiffs allege that at some point before March 10, 2025, an unauthorized third party accessed Defendant's network and computer systems and acquired some of Defendant's data, including its employees' and customers' PII. (Id. at ¶ 31) On or

about July 16, 2024, Plaintiffs allege Defendant began sending affected individuals a Notice of Data Incident letter (the "Notice Letter"). (<u>Id.</u>) The Notice Letter informed recipients that on March 10, 2024, Defendant discovered it was the victim of a "cybersecurity incident." (<u>Id.</u>) According to the Notice Letter, a third party acquired their personal information, including their SSNs, driver's license numbers, and names. (<u>Id.</u>) Defendant estimated the PII of approximately 123,000 individuals could have been impacted. (<u>Id.</u> at ¶ 7) In this action, Plaintiffs assert claims of negligence, negligence *per se*, breach of implied contract, and unjust enrichment arising out of the alleged breach of Defendant's data security. (<u>Id.</u> at 56–73)

On February 3, 2025, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement, which the Court granted. (Dkt. 32) In the Order granting preliminary approval, the Court provisionally certified the Settlement Class, defined as

> All natural persons who were identified to receive a notification letter from MarineMax, Inc. or Newcoast as a result of the Data Incident. Excluded from the Settlement Class are all attorneys and employees of Settlement Class Counsel, any judicial officer to whom this case is assigned, and persons who validly opt out of the settlement by following the procedures set forth herein.

(<u>Id.</u> at 1–2) The Court provisionally designated Plaintiffs Lomedico and Niblock as Settlement Class Representatives. (<u>Id.</u> at 2) The Court also provisionally designated Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC and Brittany Resch of Strauss Borrelli PLLC as Settlement Class Counsel, finding them to be experienced and adequate counsel for the provisional class. (<u>Id.</u> at 3) The Court

preliminarily approved the Settlement Agreement, finding it was fair, reasonable, and adequate and that notice of the settlement should be provided to the Settlement Class. (Id.) The Court appointed Kroll Settlement Administration as the Claims Administrator, which would effectuate the Court-approved Notice Program and administer the claims. (Id. at 4)

The Parties represent that the Notice Program has been completed in compliance with the Settlement Agreement and the Preliminary Approval Order. (Dkt. 36-2 at ¶ 14) The deadline for submitting a claim was June 13, 2025, and the deadlines for objecting or opting out of the proposed settlement were May 14, 2025. (Dkt. 36-3 at ¶¶ 14, 17) Only one request for exclusion was received, and counsel for Plaintiffs represented at the hearing that the claims rate is over 5%. No objections were received.

### A.    Settlement Terms

The Settlement provides for a non-reversionary $1,018,825.50 all cash Gross Settlement Amount. (Dkt. 36-1 at ¶ 1(n)) The Gross Settlement Amount will be used to pay: (1) Settlement Class Member benefits; (2) any attorneys' fees and costs awarded by the Court to Class Counsel; and (3) all Claims Administration Costs. (Id.)

When submitting a Claim, Settlement Class members may elect to receive a Cash Payment and Credit Monitoring. (Id. at ¶¶ 3.5-3.8) If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims against Defendant without receiving a Settlement Class Member benefit. (Id. at

¶ 8.7) Settlement Class Members are eligible to collect for one or more of the following settlement benefits:

- Actual identity fraud losses reasonably traceable to the Data Incident ("Actual Identity Theft Losses") of up to $5,000 per individual claimant. (Id. at ¶ 3.5)

- Out-of-pocket losses reasonably traceable to the Data Incident ("Out-of-Pocket Expenses") of up to $2,000 per individual Authorized Claimant. (Id. at ¶ 3.6)

- A *pro rata* share ("Cash Payment") of the Net Settlement Fund remaining after the Actual Identity Theft Losses, Out-of-Pocket Expenses, and Credit Monitoring are deducted from the Net Settlement Fund. (Id. at ¶ 3.8) Cash Payments will be subject to a *pro rata* increase from the Net Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Net Settlement Fund.  (Id.) However, any *pro rata* Cash Payments will be subject to a per person cap of $500. (Id.)

- Credit Monitoring. Authorized Claimants who did not elect to receive two years of credit monitoring and identity theft protection previously offered by Defendant in the Notice Letter may elect up to three years of Credit Monitoring (one-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully managed identity recovery services). (Id. at ¶ 3.7) Authorized Claimants who did

- 5 -

elect to receive two years of credit monitoring and identity theft protection previously offered by Defendant may elect up to an additional year of Credit Monitoring. (Id.)

The Settlement Agreement provides for Supplemental Payments. "Supplemental Payment" refers to the amount distributed to each Authorized Claimant if sufficient money remains in the Net Settlement Fund after the Payment Void Date.[1] (Id. at ¶ 1(ee)) A Supplemental Payment shall be provided if there are sufficient funds such that each Authorized Claimant entitled to receive a Supplemental Payment will receive at least $5.00. (Id.) If any funds remain in the Net Settlement Fund after Authorized Claimants have been paid for all approved claims for Actual Identity Theft Losses, Out-of-Pocket Expenses, and Credit Monitoring and any *pro rata* Cash Payments have been made, or from Settlement Payments not cashed, deposited, or transferred to a valid Electronic Service account by the Payment Void Date, any remaining amount of the Net Settlement Fund shall be used to make a *pro rata* Supplemental Payment to each Authorized Claimant subject to a per person cap of $100. (Id. at ¶ 3.9) If there are not enough funds to pay each Authorized Claimant entitled to a Supplemental Payment at least $5.00, or there is still money left in the Net Settlement Fund after the Supplemental Payment is made, then the remaining amount

---

[1] The "Payment Void Date" is the deadline Settlement Payments sent via check or Electronic Services must be cashed, deposited, or transferred to a valid electronic account, which is 90 calendar days after the Claims Administrator issues Settlement Payments to Authorized Claimants. (Dkt. 36-1 at 1(w))

of the Net Settlement Fund shall be paid to Habitat for Humanity Tampa Bay Gulfside. (Id.)

Plaintiffs and Settlement Class Members who do not timely and validly request exclusion from the Settlement Class will be bound by the terms of the Settlement, including the Releases that discharge the Released Claims against the Released Parties. (See id. at ¶ 13) The Released Claims are only claims arising out of or relating to the Data Incident. (Id.)

After all authorized payments to the Claims Administrator, Authorized Claimants, and Settlement Class Counsel have been made, and no sooner than 150 calendar days after the Settlement Effective Date, any remaining portion of the Gross Settlement Amount shall be delivered by the Claims Administrator to Habitat for Humanity Tampa Bay Gulfside. (Id. at ¶ 12)

If final approval is granted and not reversed by writ or appeal, Defendant has no reversionary interest in any amount of the Gross Settlement Amount. (Id. at ¶ 3.11) The entire Net Settlement Fund must be paid out to Authorized Claimants and, if required, to the Habitat for Humanity Tampa Bay Gulfside, or as otherwise ordered by the Court. (Id.)

The Parties request that the Final Approval Order and Judgment include a provision for the retention of the Court's jurisdiction over the Parties and all Settlement Class Members to enforce the terms of this Agreement and the Final Approval Order and Judgment. (Id. at ¶ 14)

**B.      Application for Attorneys' Fees and Costs**

The Settlement Agreement provides that Class Counsel shall apply to the Court for an award of attorneys' fees of up to 33.33% of the Gross Settlement Amount, plus reimbursement of costs. (Id. at ¶ 3.2) Accordingly, Plaintiffs and Class Counsel apply for an award of attorneys' fees of one-third of the Gross Settlement Amount, or $339,268.90, and costs of $576.25. The Notices to the Settlement Class Members included the amounts Plaintiffs and Class Counsel request. (Id. at ¶ 6; Dkt. 32) The Parties represent there have been no objections. (Dkt. 35-1 at ¶ 5)

**II.     LEGAL STANDARD**

**A.      Certification of a Class for Settlement of a Class Action**

"A class may be certified solely for purposes of settlement if a settlement is reached before a litigated determination of the class certification issue." Borcea v. Carnival Corp., 238 F.R.D. 664, 671 (S.D. Fla. 2006) (citations and internal quotations omitted). In deciding whether to certify a settlement class, a court must consider all the Rule 23(a) factors. In re Mednax Servs., Inc., Cust. Data Sec. Breach Litig., No. 21-MD-02994, 2024 WL 1554329, at *2 (S.D. Fla. Apr. 10, 2024). The court must also find at least one subsection of Rule 23(b) is satisfied. Id. However, "the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial." Id.

Fed. R. Civ. P. 23(a) requires (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. A court may certify a class action if "the court finds that the questions of law or fact common to class members predominate over any

questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To certify a class, also, a court must find that the class representatives have standing to sue and that the proposed class is adequately defined and clearly ascertainable. See Prado v. Bush, 221 F.3d 1266, 1279–81 (11th Cir. 2000); Little v. T-Mobile USA, Inc., 691 F.3d 1204, 1304 (11th Cir. 2012).

### B.    Approval of Class Action Settlement

Under Fed. R. Civ. P. 23(e), a settlement or compromise of a class action must be approved by the district court. Bennett v. Behring Corp., 737 F.2d 982, 985 (11th Cir. 1984). To approve a settlement, the district court must find that it "is fair, adequate and reasonable and is not the product of collusion between the parties." Id. at 986 (citations and internal quotations omitted).

First, a court must find that notice of the proposed settlement is given "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). In a class action certified under Rule 23(b)(3), class members must receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Id. at 23(c)(2)(B).

Once the court is satisfied that the notice of the proposed settlement given to the class members comports with due process, then the court may approve the proposed settlement under Rule 23(e). In doing so, the court must consider whether

> (A) the class representatives and class counsel have
> adequately represented the class; (B) the proposal was
> negotiated at arm's length; (C) the relief provided for the
> class is adequate, taking into account: (i) the costs, risks,
> and delay of trial and appeal; (ii) the effectiveness of any
> proposed method of distributing relief to the class, including
> the method of processing class-member claims; (iii) the
> terms of any proposed award of attorney's fees, including
> timing of payment; and (iv) any agreement required to be
> identified under Rule 23(e)(3); and (D) the proposal treats
> class members equitably relative to each other.

Fed. R. Civ. P. 23(e). Courts in the Eleventh Circuit also consider the following

factors, known as the Bennett factors:

> (1) the likelihood of success at trial; (2) the range of possible
> recovery; (3) the point on or below the range of possible
> recovery at which a settlement is fair, adequate and
> reasonable; (4) the complexity, expense and duration of
> litigation; (5) the substance and amount of opposition to the
> settlement; and (6) the stage of proceedings at which the
> settlement was achieved.

737 F.2d at 986.

### C.    Approval of Award of Attorneys' Fees from Class Action Settlement

Under Rule 23(h), district courts supervising class actions may "award

reasonable attorney's fees and nontaxable costs that are authorized by law." Fed. R.

Civ. P. 23(h). "Attorneys in a class action in which a common fund is created are

entitled to compensation for their services from the common fund, but the amount is

subject to court approval." Camden I Condo. Ass'n. v. Dunkle, 946 F.2d 768, 771

(11th Cir. 1991). In the Eleventh Circuit, class counsel is awarded a percentage of the

funds obtained through a settlement. Id. at 774. "[D]istrict courts in the Eleventh

Circuit routinely approve fee awards of one-third of the common settlement fund."

- 10 -

<u>Hanley v. Tampa Bay Sports & Ent. LLC</u>, No. 19-CV-550, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (citing <u>Wolff v. Cash 4 Titles</u>, No. 03-22778-CIV, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012); <u>Waters v. Int'l Precious Metals Corp.</u>, 190 F.3d 1291, 1295–96 (11th Cir. 1999)).

## III.    DISCUSSION

The Court finds the proposed settlement should be finally approved and Plaintiffs' application for attorneys' fees and costs should be granted.

### A.    Class Certification

The Court finally certifies the Settlement Class under Rules 23(a) and 23(b)(3). The Rule 23(a) factors are present. The proposed class is sufficiently numerous, and the claims of the members of the proposed class share common issues of law and fact. The claims of the Class Representatives, one as a former employee of Defendant and the other as a customer of Defendant, are typical of and arise out of the same operative facts as the claims of the other members of the proposed class. Class counsel has fairly represented the proposed class members by engaging in productive negotiations and informal discovery with Defendant's counsel and avoiding expensive pre-trial litigation, resolving the dispute efficiently. Class counsel is experienced in complex litigation and class action lawsuits. Plaintiffs, as Class Representatives, have no conflicts of interest vis-à-vis the rest of the Settlement Class. Thus, the requirements of Rule 23(a) are satisfied.

The Court may certify the Settlement Class under Rule 23(b)(3). The questions of law or fact arising out of the alleged breach of Defendant's data predominate over

any questions affecting only individual class members. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy given the number of claimants and the similarity of their claims.

Additionally, both named plaintiffs have standing because both named plaintiffs received notice that their PII was stolen during the alleged data breach. The class definition is adequately defined and clearly ascertainable, defining class members as "[a]ll natural persons who were identified to receive a notification letter from MarineMax, Inc. or Newcoast as a result of the Data Incident."

Based on the foregoing, the Court finally certifies the Settlement Class for purposes of settlement.

### B.    Final Approval of Settlement Agreement

#### 1.    Notice to the Class Members

After the Settlement Class was preliminarily certified for the purpose of settlement, the Claims Administrator reviewed a data file containing 123,032 unique records for the Settlement Class Members. (Dkt. 36-3 at ¶ 5) The data file contained mailing addresses for 105,263 of these records, to which the Claims Administrator mailed a postcard notice. (Id.) The Claims Administrator estimates that postcard notices likely reached 99,545 of 123,032 Settlement Class Members. (Id. at ¶ 13)

The Claims Administrator created a toll-free telephone number for Settlement Class Members to call for information about the Class Action Settlement. (Id. at ¶ 6) Additionally, the Claims Administrator created an email address to receive and reply to email inquiries. (Id. at ¶ 8) The Claims Administrator also created a website,

www.marinemaxsettlement.com, which contained a summary of the Class Action Settlement, important dates and deadlines, contact information for the Claims Administrator, answers to frequently asked questions, and downloadable copies of relevant documents, including the operative complaint, Settlement Agreement, motion for preliminary approval, Preliminary Approval Order, Long Form Notice, Claim Form, Plaintiffs' application for attorneys' fees and costs, and Plaintiffs' motion for final approval of the Class Action Settlement. (Id. at ¶ 9) The website allowed Settlement Class Members an opportunity to file a Claim Form online. (Id.)

As of May 23, 2025, the Claims Administrator received 4,146 Claim Forms through the mail and 1,648 Claim Forms filed electronically through the Settlement Website. (Id. at ¶ 15) The Claims Administrator received one request for exclusion. (Id. at ¶ 18)

The Court finds that the Notice Program provided the Settlement Class reasonable notice, and the notice provided was the best notice practicable under the circumstances.

### 2. *The Settlement Agreement*

The Court also finds that the Rule 23(e) and Bennett factors are satisfied here. The Court finds no evidence that the settlement is the product of fraud or collusion, and each Party was adequately represented by experienced counsel. The Parties' informal exchange of discovery facilitated informed negotiations conducted at arm's length. Continued litigation of this action would be complex, expensive, and risky for both Parties. The Parties have engaged an experienced Claims Administrator to

process claims and distribute relief to the Settlement Class. The Class Representatives will be treated the same as the other members of the Settlement Class who submit valid claims to the Claims Administrator. No objections have been made to the proposed settlement. Consideration of the foregoing factors reveals no reason to reject or modify the Parties' proposed settlement.

The Court also approves of the provision in the Settlement Agreement requiring any funds remaining in the Net Settlement Fund to be paid to Habitat for Humanity Tampa Bay Gulfside. The Court notes that the Eleventh Circuit has approved of *cy pres* distributions "as a permissible method to distribute unclaimed settlement funds." Nelson v. Mead Johnson & Johnson Co., 484 F. App'x 429, 435 (11th Cir. 2012) (citing Nelson v. Greater Gadsden Hous. Auth., 802 F.2d 405, 409 (11th Cir. 1986));[2] see also Kuhr v. Mayo Clinic Jacksonville, 530 F. Supp. 3d 1102, 1112, 1127 (M.D. Fla. 2021) (approving the designation of Jacksonville Area Legal Aid as a *cy pres* recipient of "any residual sums from uncashed checks"). Courts permitting *cy pres* distributions "have been inclined to distribute such unclaimed settlement funds to 'worthy charities, especially to charities whose purposes harmonize with the underlying lawsuit.'" Esposito v. I.Q. Data Int'l, Inc., No: 18-cv-437, 2021 WL 1561479, at *1 (M.D. Fla. Apr. 21, 2021) (quoting In re Checking Account Overdraft Litig., 830 F. Supp. 2d 1330, 1354 (S.D. Fla. 2011)). "'When the *cy pres* doctrine is

---

[2] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it may be considered as persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). Where cited herein, any unreported decision of a panel of the Circuit is considered well-reasoned and is offered as persuasive, not binding.

employed by settling parties, the funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated.'" Id. (quoting In re Checking Account, 830 F. Supp. 2d at 1355) (citations and internal quotations omitted)). The purpose of tying the mission of the *cy pres* recipient to the objectives of the litigation is to ensure the choice of the *cy pres* recipient is not unduly influenced by the litigants, the attorneys, or the judge.

The Court finds that the proposed disposition of any remaining funds to Habitat for Humanity Tampa Bay Gulfside is appropriate under Eleventh Circuit precedent.[3] The proposed settlement will provide direct relief to the class members before any *cy pres* distribution occurs. See Nelson, 484 F. App'x at 435. At the final approval hearing, the Parties explained that Habitat for Humanity Tampa Bay Gulfside was chosen as a *cy pres* recipient in the wake of Hurricanes Helene and Milton, which caused substantial damage to homes and businesses in the area in which Defendant MarineMax is located. The Parties represented to the Court that no member of either counsel's firms serves on the board of Habitat for Humanity Tampa Bay Gulfside or

---

[3] A concern exists about courts' jurisdiction to award *cy pres* awards. See Poblano v. Russell Cellular Inc., 543 F. Supp. 3d 1293, 1296 (M.D. Fla. 2021) (citing Frank v. Gaos, 586 U.S. 485 (2019)) ("Given the abiding debate about the lawfulness of Article III courts to permit *cy pres* distributions as a remedy in the class action context, the Court will not approve a settlement agreement that purports to create one."). In Frank, the Supreme Court granted certiorari "to decide whether a class action settlement that provides a *cy pres* award *but no direct relief to class members* satisfies the requirement that a settlement binding class members be 'fair, reasonable, and adequate.'" 586 U.S. at 492 (emphasis added). The Court did not ultimately decide the question presented in Frank, however, because the Court found the district court had not properly addressed whether the plaintiffs had standing to litigate the class action claims. Id. at 493.

is otherwise affiliated with the charity in any manner. Although Habitat for Humanity's mission is not closely tied with the underlying objectives of this data-breach litigation, the Court may nonetheless approve the Parties' choice of *cy pres* recipient. Cf. Esposito, 2021 WL 1561479, at *2 (concluding that while proposed *cy pres* recipients—a Jewish community center's children's autism department, Saint Jude's Children's Hospital, University of Miami School of Law, and three legal aid services—were not entirely related to the objective of the class action—challenging debt collection practices—there was no reason not to approve the Parties' chosen *cy pres* recipients).

Based on the foregoing, the Court concludes that the Settlement Agreement should be finally approved. Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, (Dkt. 36), is **GRANTED**.

## C.    Attorneys' Fees & Costs

The Court finds that Plaintiffs' application for attorneys' fees and costs is also due to be granted. Plaintiffs' counsel seeks an award of 33.33% of the Gross Settlement Amount. Considering the complexity of the claims raised, the result achieved, and the lack of opposition from the Settlement class, an award of $339,268.90 in attorneys' fees is reasonable and is due to be granted.

Plaintiffs are also entitled to the requested award of costs, which total $576.25. Plaintiffs' counsel represents that these costs include fees related to filing, service, and *pro hac vice* applications. (Dkt. 35-1 at ¶ 19) The amount of requested fees appears to

be reasonable, and Defendant offers no objection. Also, no class member objects to an award of these costs. Accordingly, the request for $576.25 in costs is granted.

**IV.    CONCLUSION**

Accordingly, it is hereby **ORDERED**:

1. Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, (Dkt. 36), is **GRANTED**.

2. The Settlement Agreement, (Dkt. 36-1), is **FINALLY APPROVED** and shall **GOVERN** the Parties' conduct in the settlement of this class action.

3. The Settlement Class, as defined in the Settlement Agreement, is finally certified for settlement purposes under Fed. R. Civ. P. 23(a) and 23(b)(3). Plaintiffs Lomedico and Niblock are confirmed as the Class Representatives, and Mariya Weekes and Brittany Resch are confirmed as Class Counsel.

4. Plaintiffs' Unopposed Application for Attorneys' Fees and Costs, (Dkt. 35), is **GRANTED**. Class Counsel is awarded $339,268.90 in attorneys' fees and $576.25 in litigation costs.

5. This case is **DISMISSED WITH PREJUDICE**. The Clerk is directed to **CLOSE THIS CASE**.

**DONE and ORDERED** in Tampa, Florida this 24th day of June 2025.

_____

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Party